## H. C. MOORE v. B. F. HAVILAND.

*Evidence.　Representations to agent.　Experts.*

1. Representations made by the vendor to the agent of the vendee before he became such agent, and in connection with another transaction, do not enter into and become a part of the contract of sale.

2. Plaintiff claimed that the horse was a whistler, and gave evidence that he exhibited such symptoms on July 21st. The sale was July 10th. No evidence was introduced to show what his condition was subsequent to July 21st. *Held*, that the plaintiff had no right to inquire of his witness what the condition of the horse was August 14th as compared with his condition July 21st, in this respect.

3. Expert testimony is not admissible to show that whistling is, or is not, an unsoundness in a horse, that being question for the court and jury.

4. Where a question and answer in no way vary the force of the witness' testimony, already properly given, its admission is not assignable error, even though the question, standing by itself, might be objectionable.

5. Witness was a veterinary surgeon, had seen the horse frequently and under all sorts of conditions. *Held*, that he might be asked whether he had ever seen any indications that the horse was a whistler, and whether, if it had been, he would have seen such indications.

This was an action for the false warranty of soundness in the sale of a horse. Plea, the general issue. Trial by jury at the December term of Caledonia County Court, 1887, TAFT, J., presiding. Verdict for the defendant, exceptions by the plaintiff.

The evidence of the plaintiff tended to show that the defendant represented the horse to be sound and all right except his feet, while the defendant denied this. One Kirk acted as the agent for the plaintiff in negotiating for and purchasing the horse, and went with the plaintiff, on the 12th day of June, 1886, to the defendant's place in Danville, where they saw the horse, and conversed with the defendant about him with a view to purchasing, and the defendant testified that whatever representations he then made he expected the plaintiff would rely upon. It appeared, however, that previous to June 12, and previous to any negotiations between the plaintiff and the defendant, look-

ing to the purchase of this horse, the said Kirk had examined the horse with a view to purchasing him for another party, and that at that time the defendant had made certain representations concerning the horse to Kirk. The plaintiff offered to show what these representations were, and that Kirk relied upon them in purchasing the horse for the plaintiff. It did not appear that the attention of the defendant was in any way called to these previous representations which it was claimed that he had made to Kirk during the negotiations with the plaintiff, or that it had ever been intimated to him that the plaintiff or Kirk relied upon them in making the purchase of the horse. The court excluded the testimony, and the plaintiff excepted.

The purchase was not made on June 12, 1886, but was made on July 10, 1886, by the said Kirk, in accordance with the following telegram :

"Amesbury, Mass., July 10, 1886. To C. E. Kirk, St. Johnsbury, Vt. Buy if all right ; will write when to ship. H. C. Moore."

The sale was made at Danville, and the court told the jury that if the defendant saw and read the telegram, and let the horse go in response to it, it became binding on him, and that if the horse was not then all right, the defendant would be liable. The defendant denied all knowledge of the telegram and its contents.

The testimony of the plaintiff tended to show that the horse was a whistler, and this was the unsoundness complained of. The horse was shipped to Boston, where he arrived on July 21st, 1886, and the plaintiff's testimony tended to show that on that day he exhibited symptoms of being a whistler. The defendant claimed that horse was not, at time of sale, a whistler, and that the symptoms observed on his arrival in Boston were merely temporary. In this connection the plaintiff introduced the deposition of one Webber, who had first seen the horse in Boston July 21st. Certain portions of this deposition were admitted, but the following interrogatory was excluded :

"Int. 13. How did his condition at the time of the auction compare with his condition at the time you first rode after him in respect to the whistling ?"

" Ans.   I could see no difference."

The auction referred to in this interrogatory was August 14th, 1886 ; and unless the above question and answer had that tendency, no testimony offered by the plaintiff, which tended to show the actual condition of the horse as to being a whistler, either at his arrival in Boston or on the day of the auction, was excluded.

The plaintiff offered to show by expert testimony that whistling was an unsoundness, and that it was so universally considered among horsemen.   The court permitted the plaintiff to show fully by such witnesses what the defect of whistling was, and what its appearances were, and how it affected a horse, but held that whether such trouble in fact constituted an unsoundness was a question for the jury under proper instructions from the court, and refused to admit the testimony, to which the plaintiff excepted.

The defendant introduced as a witness one Conner, who testified that he was a veterinary surgeon, had lived within three or four rods of the defendant's barn during all the time the defendant had owned the horse, had rode after him, and seen him driven in all the ordinary ways of driving.   Against the exception of the plaintiff, this witness was allowed to testify as follows :

" Q.   State whether you saw any indications about him of being a whistler ?

A.   Never did.

Q.   State whether if there had been any indication of his being a whistler, you would have noticed it ?

A.   I should."

*Ide & Stafford,* for the plaintiff.

It was error to exclude the representations made by the defendant to Kirk while negotiating for the sale of the horse on account of another party.   This ruling assumed as a matter of law that these representations could not have entered into, and become a part of the transaction in suit, whereas they well might ; and it

was for the jury to say from all the circumstances whether in fact they did ; whether they were made so near the time of this sale, that Kirk did, and the defendant ought to have known that he would communicate them to the plaintiff, and rely upon them in acting for the plaintiff.

The court erred in excluding the 13th interrogatory and its answer in the deposition of Webber. The defendant insisted that the horse never was a whistler, and that the symptoms observed July 21st, on his arrival, were merely temporary. In view of this claim it was clearly pertinent to show that the condition of the horse continued the same in this respect until the auction, Aug. 14.

It was error to exclude the evidence of experts as to whether whistling is an unsoundness in a horse, and is so universally considered among horsemen. That was not a matter of common knowledge. The terms "sound" and "unsound" have a definite technical meaning in the trade, and that meaning may be shown.

Certainly if the plaintiff could not show that the horse was unsound, by putting that general question, the defendant could not show that he *was* perfectly sound, by an equally general question, as he was permitted to do in the 8th interrogatory of Way's deposition.

Whether if the horse had been a whistler, Conner would have noticed it, was a question for the jury. It was a matter of opinion upon the circumstances detailed.

*Bates & May,* for the defendant.

The previous representations to Kirk were properly excluded. Those representations were not alluded to in any way in the course of the trade with the plaintiff, and were not in any sense a part of it.

That portion of Webber's deposition which was excluded simply compared the condition of the horse on two different days after he was purchased by the plaintiff. It had no tendency to show what the condition of the horse was after the sale as

resulting from the malady with which the plaintiff claims that he was then afflicted, and that was the only aspect in which that sort of testimony could become admissible.  *Stanton* v. *Proprs. of Haverhill bridge*, 47 Vt. 172.

That part of Conner's testimony objected to was admissible under the rule in the following cases:  *Casey* v. *R. R. Co.*, 8 Daly (N. Y.) 220 ;  *Cavendish* v. *Troy*, 41 Vt. 108 ; S. C. Lawson on Expert Evidence, 8, 274.

The opinion of the court was delivered by

Ross, J.   I.  There was no error in the exclusion of the defendant's representations made to Kirk when acting as the agent of another proposed purchaser of the horse through the agency of Kirk.   Representations to an agent are in law representations to his principal.   It would be illogical to hold that representations to an agent, acting for A., without being alluded to, entered into a subsequent transaction concerning the same subject matter, conducted through the same agent for B.  It does not follow that the seller would make the same representations at a subsequent time, which he made on a former occasion, nor that he would make the same representations in a trade with B. for the sale of an article, which he previously made in attempting to effect a sale of the same article to A.   The article might, to his knowledge, have changed during the intervening time, or he might not desire, upon reflection, to abide by the representations he had made to A.   But if this were not so the plaintiff, on his own testimony, relied upon the representations which the defendant made to him in person, when he and Kirk were present and examined the horse, and on his telegram to Kirk, which the jury must have found was never communicated to the defendant.

II.  While the defendant contended that the horse was not a whistler at the time of the sale nor ever thereafter, he gave no evidence of his condition after he parted with the possession of the horse July 20.   On the issue made by the evidence it was immaterial to compare the condition of the horse on July 21st

and August 14th, as was done by the interrogatory and answer excluded in the deposition of Webber. No harmful legal error could arise out of this exclusion. While it is apparent that the evidence might have been such as to put in issue the condition of the horse August 14th, as compared with his condition July 21st, unless it did so, the court might well treat the comparison as immaterial. The exclusion of immaterial testimony cannot be held error. To render testimony legally admissible, it must be material to some issue on trial. The plaintiff contends that the condition of the horse August 14th was a disputed point. It was so by the claim of the defendant, but not by any evidence introduced by him. If on the evidence his condition August 14th was in contention, that fact would not necessarily render a comparison of his condition on that day with his condition July 21st material. We think from the exceptions bearing on this point, it is apparent the plaintiff did not suffer any legal injury by the exclusion of the comparison, and the exception is unsustained.

III. The plaintiff was allowed to show by expert witnesses what whistling in horses is, and how it affects them, but was precluded from showing by this class of witnesses that whistling in horses was an unsoundness, and that it was so universally considered among horsemen. The court instructed the jury in a manner not excepted to in regard to what facts would amount to a legal unsoundness in a horse, and submitted to the jury to determine whether they found such facts established. We think there was no error in the action of the county court on this subject. The proposition of the plaintiff would substitute the expert witnesses in the place of the court and jury to determine what constitutes an unsoundness. This is never allowable. Witnesses, expert or non-expert, are never legally allowed to assume the province of both the court and jury.

IV. Interrogatory 8 in the deposition of Albert Way was, "State whether there was any unsoundness of any kind about the horse," and the answer, "He was perfectly sound with the exception that he was inclined to be flat-footed." This question

Moore *v.* Haviland.

and answer, if they stood alone, were a clear invasion of the principle which we have just laid down, that a witness, expert or non-expert, is never allowed to assume the office of both the court and jury in determining the vital question in issue. But by the two preceding questions the witness had been particularly called upon to state whether during the summer of 1886, at any time, while he knew the horse, there had been any defect about his breathing, or if he had noticed any inclination or appearance of his being what is called a whistler. These questions the witness had answered in the negative. They covered fully the only point in issue, on this subject, between the parties. In this state of the witness' testimony interrogatory 8 and its answer were wholly immaterial. They added nothing to the force of the witness' testimony, properly drawn out, in the case. It would have been wiser perhaps to have excluded the interrogatory and its answer; yet it is quite manifest that, following the witness' testimony properly drawn out on the vital question in the case, it added nothing to the force of that testimony, and was directed to a phase of the case, which might have been, but was not in issue, and so it was wholly irrelevant and immaterial and could have wrought the plaintiff no injury.

V. The witness Conner was a veterinary surgeon, resided in close proximity to the defendant's barn while he owned the horse, had ridden after and seen the horse driven. It was proper to ask him if he had seen any indications about him of being a whistler, and whether, if there had been any such indication, he would have noticed it. He was one who knew what the indications that a horse was a whistler were, and who, from his profession and acquaintance with the horse, would be likely to notice such indications. The last question and answer really added nothing to the testimony already given. It could, at the worst, be but uninjurious to the plaintiff.

*The judgment of the County Court is affirmed.*