## GARY W. HOUSTON v. BRUSH & CURTIS.

JANUARY TERM, 1894.

*Waiver of demurrer.   Master and servant.   Machinery.  Inspection.   Fellow servant.   Evidence.   Reputation as careful man.   Trial.*

1.  By pleading over and going to trial a defendant waives his exception to the overruling of his demurrer to the declaration.

2.  The duty of the master to provide for the use of his servant suitable implements is an absolute one, both as to the original furnishing and as to the subsequent inspection, and if the master delegates this duty to another he is liable for the neglect of such other in that behalf.

3.  The claim of the plaintiff being that the defendant had not kept a derrick in safe condition, the defendants cannot show that their servant, who was charged with the oversight of the same, was ordinarily a careful and prudent man in such matters.

4.  The mere exclusion of an unanswered question is not error. The excepting party must make an offer showing that the answer would disclose admissible evidence.

5.  The plaintiff was injured by being struck by one of the wheels from a tackle block attached to the mast of the derrick. The wheel became loose and fell because the pin which passed through the center of the block had worked

out. The plaintiff claimed that the defendant was negligent in not providing a suitable block and in not keeping it in suitable repair. *Held*, that the opinion of a person having experience in the use of derricks that such blocks were suitable and as to how the pin worked loose in this case, was inadmissible; for those questions were for the jury and no special knowledge or skill were required to decide them.

6. Nor could it be shown by those engaged in the use of derricks that they had never known a pin like this one to work out.

7. It will be presumed that a given line of inquiry permitted on cross-examination was proper subject matter of cross-examination unless the exceptions affirmatively show the contrary.

8. The simple asking of an unanswered question affords no ground of exception.

9. The defendant should have been permitted to show how the block was fastened to the mast, for upon its position depended the likelihood of the pin working out.

10. Since it appears from the case as stated in the exceptions that this evidence was material, and since the court excluded it as immaterial, no further offer by the excepting party was necessary.

11. The court properly refused to direct a verdict for the defendants.

12. The foreman of the defendants, in the discharge of his duty to inspect this derrick, would not be the fellow servant of the plaintiff.

13. The mere happening of the accident, in the circumstances of this case, is evidence of negligence.

14. As applied to the facts in this case there was no error upon the part of the court in omitting to state to the jury that the plaintiff took all the risks ordinarily incident to that work. The risk which befell the plaintiff was not one within the apprehension of either party, and therefore not one which the plaintiff assumed.

15. It was not as much the duty of the plaintiff as of the defendant to inspect this block.

16. The master is chargeable not only with the knowledge which he actually has, but with that which he ought to have as well.

17.  The fact that this derrick had been in daily use for a long time and had uniformly proved safe and efficient did not relieve the defendants from the duty of inspecting it.

18.  If the exceptions do not show that there was anything in the case calling for a certain charge, failure to comply with a request to so charge will not be error.

Case for the negligence of the defendant.   Heard at the June term, 1893, Caledonia county, TAFT, J., presiding. The defendant demurred to the declaration.   The demurrer was overruled and the declaration adjudged sufficient, to which the defendant excepted.   Thereupon the defendant plead the general issue and a trial by jury was had.   Verdict for the plaintiff.   The defendant excepts.

The evidence of the plaintiff tended to show that the defendants were engaged in the manufacture of granite and that he was employed by them as their hired servant; that it was a part of his ordinary duty to work near and about, and in connection with, a derrick; that upon the day of the injury he was engaged as usual, at work near the foot of said derrick, and was struck by an iron wheel which fell from the tackle block fastened to the upper end of the mast of the derrick, a distance of about fifty feet from the ground; that the block in question was a double block containing two iron wheels which were held in place by a steel pin passing through the block and through the center of the wheels; that the head of this pin was square and fitted into a mortise on the side of the block in such a way that the head was flush with the surface of the block, the length of the pin being such that the other end was flush with the surface of the block upon the other side; that as the block came from the shop there was fastened over the head of the pin a piece of tin to prevent it from working out, but that an examination after the accident revealed the fact that this piece of tin was gone and that the pin had worked out sufficiently to permit the wheel to fall.

The evidence of the plaintiff tended to show that the head of the pin was down as the block hung in the air; while the evidence of the defendant tended to show that it was up.

The defendants made twenty-three written requests to charge, of which the fourteenth, sixteenth and twenty-second were as follows:

"14.   If the jury find that the only defect in the derrick was that the mast did not stand plumb, the plaintiff cannot recover.

"16.   That there was no evidence in the case to go to the jury, that has any tendency to show that if the derrick was not plumb, that it had any effect upon the block that held up the boom.

"22.   The court should instruct the jury that they should return a verdict for the defendants if there is no other defect in the derrick than that it was out of plumb, and should instruct the jury that there is no evidence in the case that connects the cause of the pin coming out and the want of the mast being plumb."

There was nothing in the bill of exceptions to show that the plaintiff claimed that whether the derrick was plumb or not had anything to do with the accident.

The other questions raised and decided fully appear in the opinion.

*J. P. Lamson* for the defendants.

The defendants should have been permitted to show that the foreman was a prudent and careful man.   It was encumbent upon them to furnish such a foreman and they might show that they had done so.   *Gates* v. *Chicago Rd. Co.*, 50 N. W. Rep. 907.

The plaintiff was improperly permitted to inquire, upon cross-examination, into the cost of the derrick; that was no element in this case.   *Harrington* v. *City of Hamburg*, 52 N. W. Rep. 201; *Holden* v. *Fitchburg Rd. Co.*, 129 Mass. 268.

The accident itself was no proof of negligence.   *Rail-*

*road Co.* v. *Wagner,* 33 Kan. 660; *Sekerak* v. *Jutte,* 153
Pa. 117; *Robinson* v. *Wright,* 94 Mich. 283; *Toomeny* v.
*Steel Works,* 89 Mich. 249; *McPatten* v. *N. Y. Rd. Co.,*
44 N. Y. 478; *Knight* v. *Cooper,* 36 W. Va. 232; *Kin-
caird* v. *Oregon Rd. Co.,* 22 Oregon 35; *Johnson* v. *Rd.
Co.,* 25 W. Va. 570; *Ash* v. *Verlendon,* 154 Pa. St. 246;
*Brymer* v. *So. Pac. Co.,* 90 Cal. 496; *Robinson* v. *Wright,*
94 Mich. 283; *Mexter* v. *Coal Co.,* 152 Pa. St. 395; *Rich-
mond and D. Rd. Co.* v. *Burnett,* 88 Va. 538; *Harlman*
v. *Penn. Rd. Co.,* 144 Pa. St. 345; *Ingerman* v. *Moore,* 90
Cal. 410; *Rally* v. *Rd. Co.,* 104 Mo. 234; *Pierce* v. *Steam-
ship Co.,* 153 Mass. 87; *Cully* v. *Ins. Co.,* 153 Mass. 366;
*Steffen* v. *Chicago Rd. Co.,* 46 Wis. 259; *McKee* v. *Chi-
cago Rd. Co.,* 50 N. W. 209; *Sappenfield* v. *Main St. Rd.
Co.,* 90 Cal. 48; *Carlson* v. *Phœnix Bridge Co.,* 132 N. Y.
237; *Anniston Pipe Works* v. *Dickey,* 93 Ala. 418; *Bohn*
v. *Chicago Rd. Co.,* 106 Mo. 429; *Brady* v. *Ludlow Mfg.
Co.,* 154 Mass. 468; *Latremouille* v. *Bennington Rd. Co.,*
63 Vt. 336; *Mench* v. *Penn. Rd. Co.,* 150 Pa. St. 598.

The servant assumed the hazard of this employment.
*Hatt* v. *Nay,* 144 Mass. 186; *Linds* v. *Sagamore Co.,* 153
Mass. 206; *Berne* v. *Coal Co.,* 27 W. Va. 285; *Davis* v.
*Coke Co.,* 35 W. Va. 500; *Tuttle* v. *Rd. Co.,* 122 U. S.
189; *E. Tenn. Rd. Co.* v. *Perkins,* 88 Ga. 1; *Burg Stone*
v. *St. Paul Rd. Co.,* 47 Minn. 486; *Knight* v. *Cooper,* 36
W. Va. 232; *Quick* v. *Minn. Iron Co.,* 47 Minn. 361;
*Dumas* v. *Stone,* 65 Vt. 442; *Latremouille* v. *Benn. & Rut.
Rd. Co.,* 63 Vt. 336; *Weeks* v. *Freeman Mill Co.,* 3 Wash.
St. 629; *Smith* v. *The Serapis,* 51 Fed. 91; *Lewis* v. *Rd.
Co.,* 153 Mass. 73; *Melville* v. *Mo. River Co.,* 48 Fed.
820; *Malone* v. *Hawley,* 46 Cal. 409; *Pingree* v. *Leyland,*
135 Mass. 398; *Carbine* v. *Rd. Co.,* 61 Vt. 348; *Bohn Co.*
v. *Erickson,* 55 Fed. 943; *Breen* v. *Field,* 157 Mass. 227;
*King* v. *Ford Lumber Co.,* 93 Mich. 172; *Wheeler* v. *Berry,*

95 Mich. 250; *Levy* v. *Boston & Albany Rd. Co.*, 139 Mass. 580; *Russell* v. *Tillotson*, 140 Mass. 201; *Joyce* v. *Worcester*, 140 Mass. 245; *Rice* v. *King Philip Mills*, 144 Mass. 229.

If there was any negligence upon the part of the defendant, it was the negligence of their foreman in not having properly inspected this derrick. The foreman was the fellow servant of the plaintiff; hence the plaintiff cannot recover. *Johnson* v. *Boston Tow Boat Co.*, 135 Mass. 206; *McGinty* v. *Athol Res. Co.*, 155 Mass. 183; *Holden* v. *Fitchburg Rd. Co.*, 129 Mass. 129.

It was as much the duty of the plaintiff as of the defendants to inspect this derrick; he had the same means of observation. *Davis* v. *Pelham Hod. Co.*, 65 Kan. 573; *Railroad Co.* v. *Orr*, 91 Ala. 548; *Hart* v. *Naumburg*, 123 N. Y. 641; *Kelley* v. *Rd. Co.*, 11 N. Y. S. 344.

The master is only liable when he has knowledge of the defect complained of. *Bajus* v. *Syracuse Rd. Co.*, 103 N. Y. 312; *Lake Shore Rd. Co.* v. *McCormick*, 74 N. Y. 440; *Dealin* v. *Smith*, 89 N. Y. 470; *Payne* v. *Reese*, 100 Pa. St. 301; *Hobbs* v. *Slauter*, 62 Wis. 108; *Atchinson Rd. Co.* v. *Ledbeter*, 34 Kan. 326; *Brymer* v. *So. Pacific Co.*, 90 Cal. 496; *Simpson* v. *Pittsburg Works*, 139 Pa. St. 245.

*Bates & May* and *Perley & Taylor* for the plaintiff.

The defendant, having gone to trial, cannot urge the exception taken to the overruling of his demurrer. *Rea* v. *Harrington*, 58 Vt. 181.

The defendants could not show the reputation of their foreman as to being a prudent and careful man. *Harris* v. *Howard*, 56 Vt. 695; *Aiken* v. *Kennison*, 58 Vt. 665; *Whitney* v. *Bank*, 55 Vt. 154; *Bryant* v. *Rd. Co.*, 56 Vt. 710; *Chase Rd. Co.*, 77 Me. 62; *Eaton* v. *Tel. Co.*, 68 Me. 63.

Whether this block was a suitable one and in suitable re-

pair, was a question which the jury could decide as well as an expert. Therefore, expert testimony in that respect was not admissible. Lawson, Expert Ev. 507 ; *Oakes* v. *Weston*, 45 Vt. 430.; *Fraser* v. *Tupper*, 29 Vt. 409; *Bemis* v. *Rd. Co.*, 58 Vt. 636; *McCarragher* v. *Rogers*, 120 N. Y. 533; *Yeaw* v. *Williams*, 15 R. I. 20; 1 Greenl., Ev. (15th Ed.), s. 440 (c.).

THOMPSON, J.  I.  By pleading over and going to trial instead of submitting to judgment on the declaration, the defendant waived his exception to the ruling on the demurrer. *Rea* v. *Harrington*, 58 Vt. 181.

II.  It was the duty of the defendants, as master, to provide a derrick reasonably fit for the use to which it was to be put by the plaintiff in their employ, and to inspect and keep it in reasonably good repair for such use. Whether they undertook to perform this duty personally or by their foreman, Mr. Bailey, any negligence in respect to it was their negligence, for which they are liable. *Davis* v. *Railroad Co.*, 55 Vt. 84; Deering on Neg., s. 198. As tending to prove that they had not been negligent in performing this duty, the defendants offered to show the care their foreman " took of the management of the machinery, derricks, and the things that were being used by the workmen, whether he was a careful and capable man for the place." This offer was excluded, to which the defendants excepted. General evidence of the care and prudence of the foreman at other times and in respect to other things, would have no tendency to prove care and prudence on his part in regard to this particular tackle block. His care and prudence as to that must be decided upon the evidence showing his acts in relation to it. The defendants were permitted to show " the care, inspection, condition and all things relating to the derrick causing the accident." This was all they were legally entitled to show as the issues were made. *Strong*

v. *Slicer*, 35 Vt. 40; *Bryant* v. *Cent. Vt. R. R. Co.*, 56 Vt. 710; *Gahagan* v. *B. & L. R. R. Co.*, 1 Allen 187; *Maguire* v. *Middlesex R. R. Co.*, 115 Mass. 239.

III.   Defendants' witness, Benjamin, was asked whether the tackle block was suitable for the purpose for which it was used, and the question was excluded.   In connection with this ruling there was no offer by the defendants to show anything by this witness on the subject matter of the question, and it cannot be assumed that he would have given testimony favorable to them in response to it.   Hence the record does not show error in the exclusion of this inquiry.   *Roach* v. *Caldbeck*, 64 Vt. 593; *Carpenter* v. *Willey*, 65 Vt. 168.   This view of the matter disposes of the exceptions to the exclusion of questions put to this and all other witnesses, where there was no offer to show anything by the witness, except in the instances where the exclusion was upon the ground that the subject matter of the inquiry was immaterial.   As the points have been fully argued, and the case must go back for a new trial, it may not be amiss to say that if there had been a specific offer to show by Benjamin that the tackle block, in his opinion, was suitable, and by Carrick the manner in which, in his judgment, the pin could have worked up so as to let the wheel out, such evidence would have been inadmissible.   Whether the block was in suitable repair at the time of the accident was the ultimate question to be decided by the jury.   The only defect claimed was that the pin was not originally fastened into the block properly, or that, if properly secured when the block was made, the block had not been kept in suitable repair in that respect.   When its structure, its strength, the method of its use, the manner in which the tin over the head of the pin was fastened to the block, and the position of the head in regard to being up or down, had been fully described, the inference whether the block was reasonably safe was one which required no particular knowledge or skill to

draw, but was one which the jurors, exercising their sound judgment, could as well decide as any witness. So, too, they could determine whether the pin worked up or down, and how, if it were necessary, as well as any one, in the light of all the evidence. Hence the subject of these inquiries was not within the rule which admits opinion evidence. *Clifford* v. *Richardson*, 18 Vt. 626; *Fraser* v. *Tupper*, 28 Vt. 409; *Bryant* v. *Railroad*, 57 Vt. 710; *Carpenter* v. *Corinth*, 58 Vt. 244; *Bemis* v. *Railroad*, 58 Vt. 637; *Moore* v. *Haviland*, 61 Vt. 58.

IV. The defendants insist that it was error not to allow them to show, by several witnesses of experience in the use of derricks and tackle blocks, that " they never knew of a pin in a tackle block like this one working out." The court properly excluded this evidence as offered. It in no way related to the tackle block in question, but wholly to collateral matter. It in no way bore upon the defendants' care or negligence in regard to this block. Stephen's Ev. (May's Ed.), 55.

V. On cross examination of one of defendant's witnesses the plaintiff was permitted, against their exception, to interrogate him as follows :

Q. " Do you know what this derrick cost? "
A. " No, sir, I could not say what."
Q. " Did you ever hear any one say? "
No answer.
Q. "Ask you if it is a fact that they told you it cost one hundred dollars? "
No answer.
Q. " Did you ever hear how much it cost? "
A. " I should presume I have heard."

The exceptions do not show that this line of inquiry was not strictly cross examination upon subject matter opened up by the defendants in their examination of the witness, and the contrary not appearing, it is to be presumed that

such was the case, and that the court properly permitted this inquiry for that reason.

But were it assumed to be otherwise there was no error. The unanswered questions were not evidence, and it was not error to permit them to be put. *Carpenter* v. *Corinth*, 58 Vt. 214; *Smith* v. *Ins. Co.*, 60 Vt. 682. The answers given to the other questions in connection with the questions could not have worked the defendants harm, as they elicited no fact.

VI. The defendants offered evidence tending to show how the tackle block was fastened to the mast and it was excluded as immaterial. That the plaintiff made no claim of any defect in regard to the fastening is not decisive as to the admissibility of this evidence. There was a conflict between defendants' evidence and plaintiff's in respect to the position of the head of the pin at the time of the accident. If the head of the pin was up it might well be claimed that the tin over it would not have to be so strongly fastened to the block to keep the pin from working out as it would were the head down. Thus the position of the head of the pin bore directly upon the ques.ion of the care which the defendants ought to have exercised in so securing it that it would not work out. It is apparent that the position of the block and consequently that of the head of the pin was determined by the manner in which the block itself was attached to the top of the mast. Hence this evidence was material and it was error to exclude it. No further offer by the defendants was necessary to make this exception available, as the exclusion of the evidence on the ground that it was immaterial was a ruling that no inquiry on the subject matter would be allowed. *Winchell* v. *Natl. Ex. Co.*, 64 Vt. 15.

VII. The defendants contend that there was error in not directing a verdict for them at the close of the evidence, as they requested. The evidence tended to prove that the

plaintiff was the servant of the defendants; that they furnished a derrick for the plaintiff to use in their work in which he was engaged, and that while he was thus using it he was injured, without his fault, by the falling of a wheel from the tackle block attached to the top of the mast of the derrick; that this block had two wheels in it, which were fastened in by a steel pin passing through the block; that one end of the pin had a square head which, by means of a mortise, was sunk into the upper side of the block so that it was flush with that side, and the other end of the pin was flush with the other side of it; that when the block came from the shop where it was manufactured, there was a small piece of tin tacked on over the head of the pin. The plaintiff's evidence further tended to show that on the day of the accident this tin had come off and the pin had worked out far enough to let the wheel out, and that it fell about fifty feet, striking him upon the head and inflicting the alleged injuries. There was evidence tending to show that the tin covering the head of the pin had never been suitably tacked on in its place. The only defect claimed in this derrick was in this tackle block, and the plaintiff offered no evidence and made no claim that the block was unsuitable in make or workmanship, if it had been kept in proper repair and the head of the pin had been properly secured. The evidence of the plaintiff tended to prove that at the time of the accident the pin was head down and had worked down, while that of the defendants tended to prove that the head was up and that their foreman, Bailey, skilled in the care and management of derricks, had often been to the top of the mast to see that everything was safe, and that the last time he made such inspection was about thirty days next before the accident. There was no evidence that either the plaintiff or the defendants had any apprehension that an accident like this might happen, or knew that the tin was off. The case standing thus, the plaintiff clearly had the right to

go to the jury on the questions whether the tackle block in the first instance was reasonably fit for the use to which it was to be put, and, if so, whether the defendants had properly inspected it and kept it in reasonably good repair, so that the plaintiff's injuries were not the result of a shortage of legal duty on their part.

But the defendants insist that the negligence, if any, in respect to the block, was the negligence of Bailey, who had charge of it, and that he was a fellow servant of the plaintiff, and consequently there can be no recovery by the plaintiff against them. The master is liable for the negligence of his servant while discharging a duty which the master owes to a general workman in his employ. If the tackle block was unsafe and unfit for use in the respect complained of, when it came from the manufacturer and was put upon the derrick, or subsequently became so by reason of the failure of the defendants to properly inspect it and keep it in repair, they are liable, whether this condition resulted from their own negligence or from the negligence of some servant to whom they delegated the performance of the duty which the law imposed upon them. *Davis* v. *Railroad*, 55 Vt. 84; Deering Neg. s. 198. Hence the defendants were not entitled to have a verdict directed for them on this ground.

VIII. By their twenty-first request, the defendants asked the court to instruct the jury that "the mere fact that the pin came out of the block is not sufficient to authorize any inference or presumption that the defendants failed to exercise ordinary care." To the same effect was their seventeenth request. The court refused to so instruct the jury, to which the defendants excepted.

Where an accident has occurred, and the physical facts surrounding it are such as to create a reasonable probability that the accident was the result of negligence, in such case, the physical facts themselves are evidential, and fur-

nish what the law terms evidence of negligence in con-
formity with the maxim, *res ipsa loquitur*. The cases are
not in full accord upon this question. It is often difficult to
determine when this maxim is to be applied, and its applica-
tion must depend to a very great extent upon the circum-
stances of each case as it arises. In Shearman and Redf.
on Neg. (2d Ed.), s. 13. it is said that,

" Though it is not every accident that will warrant an in-
ference of negligence, yet it is not true that no accident will
suffice for this purpose. If the plaintiff proves that he has
been injured by an act of the defendant, of such a nature
that in similar cases, where due care has been taken, no in-
jury has been known to ensue, he raises a presumption
against the defendant which the latter must overcome by
evidence either of his carefulness in the performance of the
act or of some unusual circumstance which makes it at least
probable that the injury was caused by some circumstance
with which he had nothing to do."

This subject is discussed in a note to *Huey* v. *Gahlenbeck*,
6 Am. St. Rep. 792, in which the learned author says :

" That an accident may be of such a nature as to raise a
presumption of negligence is fully sustained by authority.
The doctrine is maintained that proof of the occurrence of
an accident which, under ordinary circumstances, would
not have happened if due care had been exercised, raises a
presumption of negligence, and the burden of proof is then
cast upon the defendant to rebut the presumption. *Tuttle*
v. *Railroad Co.*, 48 Iowa 236 ; *Kaples* v. *Orth*, 61 Wis.
531 ; *Breen* v. *New York, etc:, R. R. Co.*, 109 N. Y. 297.
Or, as expressed in an English case, 'where the thing is
shown to be under the management of the defendant or his
servants, and the accident is such as, in the ordinary course
of things, does not happen if those who have the manage-
ment use proper care, it affords reasonable evidence, in the
absence of explanation by the defendant, that the accident
arose from the want of care.' *Scott* v. *London, etc., Docks
Co.*, 3 Hurl. & C. 596 ; and see, to the same effect, *Kear-
ney* v. *Railway Co.*, L. R. 5, Q. B. 411 ; 6 Id. 759 ;
*Bridges* v. *North London Ry. Co.*, 6 Id. 377 ; *Gee* v.
*Railway Co.*, 8 Id. 161. In such case, however, it is hardly

accurate to say that negligence is presumed from the mere fact of the injury, but rather that it may be inferred from the facts and circumstances disclosed, in the absence of evidence showing that it occurred without the fault of the defendant. Such a case comes within the principle of *res ipsa loquitur;* the facts and circumstances speak for themselves, and, in the absence of explanation or disproof, give rise to the inference of negligence."

In *Kearney* v. *London, etc., R.R. Co., supra*, the plaintiff was passing on a highway under a railroad bridge, when a brick fell from one of the pilasters upon which an iron girder of the bridge rested, striking him upon the shoulder, causing injury, and it was held that it was a case to which the maxim *res ipsa loquitur* was applicable; in other words, that the falling of the brick was *prima facie* evidence of negligence on the part of the defendant. In the court of Queen's Bench the decision was by a divided vote, but in the Court of Exchequer Chamber the principle was unanimously affirmed. There was no *affirmative act* in the the case of *Kearney*, from which negligence might be inferred.

In *Byrne* v. *Boadle*, 2 Hurl. & Colt., 722, the plaintiff, while passing along the street, was injured by the falling of a barrel from a window of a warehouse or shop, and it was held that the accident was *prima facie* evidence of negligence.

In *Scott* v. *London Dock Co., supra*, the injury was caused by the falling of bags of sugar on the plaintiff as he was passing by a warehouse, and the court held that the accident itself afforded reasonable evidence, in the absence of explanation, of negligence.

The case of *Gee* v. *Metropolitan Railway Co.*, L. R., 8 Q. B., 161; S. C. 5 Eng. Rep. (Moak's Notes) 167, affirms the same principle as applied to another class of cases. It has been held that where a building adjoining a street falls into the street and injures the plaintiff, in the absence of explanatory circumstances, negligence will be presumed.

*Mullen* v. *St. John*, 57 N. Y. 567; S. C. 15 Am. Rep. 530.

In the case of *Volkmar* v. *Manhattan Railway Co.*, 134 N. Y. 418, 30 Am. St. Rep., 678, the plaintiff, while driving along under the defendant's elevated railroad structure, was struck and injured by an iron plate or clip, with a part of a broken bolt, which fell from a structure, and it was held that the accident itself raised the presumption of negligence. See other cases there cited to the same effect.

So where an elevator fell without any apparent cause and injured the plaintiff, the court held that, as ordinarily an elevator properly constructed and properly managed does not fall, and as that elevator did fall, the presumption was that there was something wrong, either with the elevator or with the management of it, and that presumption would warrant a verdict for the plaintiff unless it were rebutted by the defendant's evidence. *Gerlach* v. *Edelmeyer*, 15 Jones & S. 292, 88 N. Y. 645.

So, too, the fact that telegraph wires are found swinging across the highway, at a height to obstruct and endanger ordinary travel, is in itself, unexplained, evidence of negligence. *Thomas* v. *Western Union Tel. Co.*, 100 Mass. 156.

For a further discussion of the subject see note to *Huey* v. *Gahlenbeck*, 6 Am. St. Rep. 792; note to *Smith* v. *Railway Co.*, 50 Am. Rep. 553; note to *Philadelphia, etc., R. R. Co.* v. *Anderson*, 20 Am. St. Rep. 490; Bigelow's Lead. Cases on Torts, 596, where a large number of cases are cited bearing upon the question in the various forms which it assumes. Also see Smith on Neg. (*245); Addison Torts (Wood's Ed.) ss. 33, 355, 545, 546, and 607; 2 Thomp. Trials, s. 1678; Deering Neg., 405.

The doctrine of *res ipsa loquitur* has been more frequently invoked and applied in actions against carriers of passengers than in any other class of cases, and the reported cases

of that kind are very numerous in which it has been applied. An attempt has been made by some law writers to limit the application of the rule to cases growing out of a contractual relation, but there seems to be no reason for such a limitation. From the foregoing authorities it is apparent that the presumption or inference arises from the nature of the act or occurrence, and not alone from the contractual relation between the parties.

Without attempting to formulate a rule embracing every case to which the maxim is to be applied, we think it is clear, from the authorities cited, that when the defendant owes a duty to the plaintiff to use a certain degree of care in respect to the thing causing the accident, to prevent the occurrence of such accident, and the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not occur if those who have the management use proper care, it affords evidence, in the absence of evidence showing that it happened without the fault of the defendant, that the accident arose from the lack of the requisite care. In such case the occurrence itself, unexplained, shows *prima facie* a shortage of legal duty on the part of the defendant.

This doctrine does not dispense with the rule that the party who alleges negligence must prove it, but, on the contrary, it only determines the mode of proving it, or what shall be *prima facie* evidence of negligence in a certain class of cases.

In the case at bar the defendants owed the requisite duty to the plaintiff to bring the case within the rule. It is evident that the accident would not have occurred if the pin had not worked out so as to cause the wheel to fall. For ought that appears the pin would not have worked out if it had been securely fastened into the block when the block was first attached to the derrick, and had been subsequently kept in that condition. It is not claimed that the pin could

not have been fastened into the block so that it could not have worked out as it did. It does not appear that any new force or unforeseen and purely accidental occurrence intervened to remove the covering from the head of the pin, thus causing the accident, but it occurred while the derrick was being put to its ordinary use. Although the derrick was almost daily subjected to the strain of lifting heavy stones, the defendants admit by their testimony that they had not inspected it to see if it was safe in this respect for about thirty days prior to the accident. It was under the care and the management of themselves and their servants. The working out of the pin was an accident which, in the ordinary course of things, does not occur if those who have the care and management of a derrick use proper care. The case standing thus, we think the jury had a right to consider the fact that the pin came out as it did, and from it to draw the inference that the defendants had failed to exercise ordinary care. The court below, therefore, rightly refused to instruct the jury as requested.

This view is not in conflict with *Latremouille* v. *Bennington & Rutland Ry. Co.*, 63 Vt. 336, upon which the defendants rely. In that case the evidence failed to fairly connect the defendant with the cause of the accident, or to put it in another way, the plaintiff's evidence showed conclusively that the defendant was not at fault. In such case the maxim does not apply and the defendant's negligence cannot be inferred from the fact that the accident happened.

IX. By their fourth request the defendants asked for the following instruction to the jury:

"The plaintiff, by engaging in the work he was doing, took all the risks ordinarily incident to that work. He was bound to exercise such care for his own protection as the kind of work in which he was engaged reasonably required. The law required him to exercise the same degree of care as it did the defendants, and if he did not, and was injured by reason of his want of ordinary care, he cannot recover."

The court correctly instructed the jury in respect to the duty of the plaintiff to use ordinary care in and about his work for the defendants, and in respect to the effect of contributory negligence on his part upon his right of recovery, but the defendants urge that there was error in that the court omitted to state to the jury that the plaintiff took all the risks ordinarily incident to that work.   As an abstract proposition of law it is true that the servant assumes such risk.   But the defect complained of, and the accident which occurred, if it was the result of such defect, were not risks ordinarily incident to the work in which the plaintiff was engaged.   The record shows that it did not appear that either the plaintiff or the defendants had any apprehension that an accident of this kind was likely to happen.   The plaintiff put his case solely upon the ground that the accident occurred to him by reason of the negligence of the defendants in not procuring a tackle block which had the pin properly fastened in at the outset, or in not properly inspecting the block and keeping it in repair in that respect. It was not the duty of the plaintiff to inspect the block for the purpose of keeping it in repair.   That duty rested upon the defendants.   There is nothing in the record which tends to show that the plaintiff knew or, as a prudent man, ought to have known of the alleged defect in the block.   Such being the case, the rule is that laid down in *Dumas* v. *Stone*, 65 Vt. 442, where the court by Rowell, J., says:

" The servant assumes the usual and ordinary risks incident to the business in which he engages; but he does not assume the unusual and extraordinary risks thereof, unless they are, or ought to have been, known to and comprehended by him, in which case he assumes those also, whatever they are.   When the servant shows that his injury was caused by a danger not usual and ordinarily incident to the business, and which ought not to have existed, and would not have existed had the master performed his duty to him, and of which he neither knew nor was negligent in not knowing,

the master is liable.   It is not enough for the master in such case that the servant was apprehensive merely of possible danger, especially when, as here, the master himself, knowing the circumstances, did not believe the danger to exist."

We do not think, as the case stood, that it was error for the court to omit to charge that the plaintiff " took all the risks ordinarily incident to the work."

X.   From what has already been said, it follows that the defendants were not entitled to have the court comply with their fifth request to charge, which among other things included the proposition that " it was as much the duty of the plaintiff to inspect the derrick as of the defendants."

XI.   The defendants were not entitled to a compliance with their fifteenth and nineteenth requests.  They both contain the proposition that to entitle the plaintiff to recover, the defendants must have known of the alleged defect.   This is not the law.   The master is chargeable not only with such knowledge as he actually has, but also with that which he ought to have by the exercise of reasonable care and diligence on his part in the performance of his duties as master. *Noyes* v. *Smith*, 28 Vt. 59; *Davis* v. *Railroad*, *supra*; *Gibson* v. *Railroad*, 46 Mo. 163; 2 Am. R. 497; Deering Neg. s. 200; 3 Wood R. R. s. 376.

XII.   The bill of exceptions does not disclose such a state of the evidence, or such issues on trial, as to entitle the defendants to a compliance with their fourteenth, sixteenth and twenty-second requests, and hence we cannot say that the court erred in refusing to comply with them.

XIII.   There was no error in not complying with the defendants' eighteenth request to charge, which was that

" When an appliance or machinery not obviously dangerous has been in daily use for a long time and has uniformly proved safe and efficient, its use may be continued without the imputation of imprudence and carelessness."

This in effect asked the court to hold as a matter of law, that without regard to the condition of the derrick when set

up, in respect to being reasonably safe and fit for the use to which it was to be put, and no matter how derelict the defendants had since been in regard to their duty to inspect and keep it in suitable repair, the jury could not find them guilty of actionable negligence, if for a long time before and down to the time of the accident, the derrick had been in daily use, and had to that time proved safe and efficient. Assuming that when first placed in position for use, the derrick was in proper condition and in every respect suitable for its intended use, it is a well known fact that in time it will become out of repair and unfit for use. It is not the duty of the servant who is required to use it, to know at his peril when such time occurs. Such, however, is the duty of the master, and ordinary care must be used to ascertain whether it is fit to be used, and what is such care must be measured by the character of the business, and the risks attending its prosecution. Negligence on the part of the master may consist of acts of omission or commission, and it necessarily follows that the continuing duty of inspection and supervision rests on the master. It will not do to say that, having furnished suitable and proper machinery and appliances, the master can thereafter remain passive so long as they work well and seem safe. The duty of inspection is affirmative and must be continuously fulfilled and positively performed. Anything short of this would not be ordinary care. *Buzzell* v. *Laconia Manufacturing Co.* 48 Me. 113 ; S. C. 77 Am. Dec. 212, and note p. 220 ; *Brann* v. *Chicago, R. I. & P. R. Co.*, 55 Iowa 595 ; 36 Am. Rep. 243. The duty of inspection being a positive and affirmative duty to be continuously performed by the defendants, the court could not say as a matter of law how often such inspection should have taken place, or that it was proper to omit it at some particular time. It was for the jury to say whether the defendants had used reasonable care in this respect.

The court substantially complied with the defendants' other requests.

*Judgment reversed and cause remanded.*