D. F. O'BRIEN v. PARKS CRAMER CO.

(Filed 12 December, 1928.)

1. **Master and Servant—Liability of Master for Injuries to Servant—Tools and Appliances—Nonsuit.**

    Where an employee and his helper are required in the course of their employment to rivet sheet metal to the ceiling of a room by the use of an electrically driven drill which was defective in having a short-circuit, and this proximately caused a shock to the helper, who was standing on a ladder with the drill, causing him to fall upon the employee below, the plaintiff in this action, resulting in the damages in suit, the evidence is sufficient to take the case to the jury and uphold a verdict in the plaintiff's favor.

2. **Same—Notice of Defect in Tools or Appliances.**

    Evidence tending to show that a servant was injured in the course of his employment by a defective driller furnished for the purpose by the employer, and that the employer had been given notice of the defect and the danger of continuing to use the defective tool, it is prima facie sufficient to take the issue of actionable negligence to the jury, and a recovery of damages may be had when shown to have been proximately caused by the defect.

3. **Same—Duty to Inspect—Negligence in Failing to Inspect—Question for Jury.**

    Where there is evidence tending to show that the master furnished his servant a defective driller machine with which to do the work within the scope of his employment, and was informed of the defect, or by proper inspection should have known of the defect in time to have repaired the tool and avoided the injury, it is for the jury to determine whether he was negligent in failing to inspect.

4. **Same—Master Not Insurer Against Injury.**

    While it is the nondelegable duty of the master to furnish the servant a safe place to work and safe tools and appliances, and to keep them

safe by reasonable inspection, under the rule of the ordinarily prudent man under the circumstances, it is not held that he is an insurer of the safety of the servant.

**5. Same—Electricity—Res Ipsa Loquitur.**

Where an electrically driven machine furnished by the master to the servant had previously shocked other employees, it is evidence of a defect therein and evidence that the master knew, or by the exercise of reasonable inspection should have known of the defect, and is sufficient to take the issue of the master's negligence to the jury, the doctrine of *res ipsa loquitur* applying.

**6. Same—Anticipating Injury.**

Where there is evidence tending to show that the servant was injured by the negligence of the master, it is not necessary for a recovery that the particular injury should have been foreseen, but it is sufficient if injury would likely or ordinarily follow the negligent act of the master.

**7. Damages—Measure of Damages—Injuries to Person—Negligence—Master and Servant.**

Permanent damages recoverable for the negligent act of another is the present net value of the difference between what the plaintiff would have earned and what he is able to earn in his present condition, taking into consideration his expectancy of life by the mortuary table, affected by evidence of his health, etc., immediately preceding the injury.

**8. Trial—Instructions—Request for Instructions.**

Where the instructions of the court to the jury are sufficiently comprehensive of the law arising upon the evidence, it is required that a party objecting thereto for indefiniteness must tender special instructions as to the particulars he desires more specific instructions upon.

APPEAL by defendant from *Lyon, J.,* and a jury, at April Term, 1928, of MECKLENBURG. No error.

This is an action for actionable negligence. Plaintiff, a machinist, was employed by defendant to work in its shop. At the time he was injured he was putting up sheet iron to enclose the shipping room. The foreman of the shop, J. L. Alexander, sent him to help Sam Williams, the boss of the shipping room. He had a helper, M. R. Smith, and they had to drill holes to connect the sash angle iron to the channel iron. A part of the sash angle iron was to be attached to the overhead. They had to be drilled to be fastened together. The place to drill was about 12 feet from the floor, and a step-ladder was used with round steps on it. An electric drill was used and the power was cut on and off. The drill was 7/16 weighing 25 to 30 pounds. Plaintiff and the helper had drilled some the day before. The floor was concrete. About a quarter to eight on the morning of 18 November, 1924, he and the helper started to drill. The plaintiff ground the drill and put it in the motor. To operate the drill he started up the ladder with it and Smith

O'BRIEN *v.* PARKS CRAMER CO.

said "I'm a younger man than you are, let me go up the ladder." Smith went up the ladder. Plaintiff stood at the foot of the ladder to steady it. Smith got to the top of the ladder, about two steps of the top; Smith placed the drill and said, "Look out, I'm ready," and then he turned the power on with the latch. It was run by electricity. Plaintiff heard the helper scream, and the next thing plaintiff knew the drill hit him a glancing blow on the head and Smith fell on plaintiff's lower hip.

Plaintiff had been on the job in the shipping room a day or two before he was hurt and had used the drill the day before, and had put a plank across to stand on, but this was so close to the corner, that he and the helper discussed it the evening before with T. S. Simpson, shop engineer, as to whether this would be the best way to do it the next day, and he said "Just go up and drill it any way." Smith, the helper went up the ladder and took the drill with him, but could not get it started, so he put one hand on the drill and reached over to pull the latch off and then the volts grabbed him and he hollered once or twice and fell on his back. Smith was shocked and dropped the drill when he got loose, which struck plaintiff's head and he fell on the plaintiff. The plaintiff was steadying the ladder. Smith had not used the drill before.

It was in evidence that the drill was short circuited and when drilling with the drill, standing on a concrete floor, a person would be shocked if he touched it.

It was in evidence that the foreman of the shop, J. L. Alexander, was notified that it had a short circuit and that he ought to have it fixed. This was "something like ten days or two weeks" before plaintiff was hurt. Another witness stated it was "not very long" before plaintiff was hurt and that he complained to the foreman of the copper shop of defendant and he promised to fix it. It shocked both of these parties. There was also another witness, at a remoter period, that testified that the foreman of the copper shop of defendant was notified of the defect of the drill and warned of trouble if it wasn't fixed. It was also in evidence as to plaintiff's injuries, "He has complained about it since he was hurt. It hurt him continuously since . . . I know he suffered with his back." Plaintiff's doctor testified that he examined the plaintiff, "I found luxation of the sacro-illiac joint. That is the joint between one of the pelvic bones and the spinal column. Luxated means loosened. . . . I prescribed his having a bandage made and applied and worn." Plaintiff testified "I have not consulted a doctor lately, but when I went to see him, he gave me a belt to wear. I am still wearing it. I went to Dr. Wiley Moore the last time. He gave me the belt to wear. I can't work like I did. I can't stoop over to pick up anything. I could get down in half a day's time if I would try. I suffer pain

from it, at times it is real bad. There are times when I can't get out of bed without pulling up by a post."

All the evidence was to the effect that plaintiff's helper was shocked by the electric current in the drill appliance, which caused him to fall and injure plaintiff.

The defendant denied negligence and set up the plea (1) Negligence of a fellow-servant; (2) Contributory negligence. The evidence of defendant contradicted that of plaintiff.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: Yes.

"2. Did the plaintiff by his own negligence contribute to his own injury as alleged in the answer? Answer: No.

"3. What damages, if any, is the plaintiff entitled to recover? Answer: $6,000.00."

Defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be considered in the opinion.

*J. D. McCall for plaintiff.*

*John M. Robinson for defendant.*

CLARKSON, J. This is an action for actionable negligence between employer and employee. It was in evidence (1) That the electric drill was defective; (2) that the *alter ego* of defendant "not very long" before plaintiff was injured was notified of the defect and promised to fix it; (3) that the helper of plaintiff went up near the top of the ladder to drill and when he turned on the current to operate the electric drill he was shocked and dropped the drill, which struck plaintiff a glancing blow on the head, and the helper fell on the plaintiff's "lower hip," injuring him. Holes were being drilled in a channel iron to connect the sash angle iron to the channel iron. A step-ladder was used as the place to be drilled was about 12 feet from the floor. The floor was concrete. Plaintiff was steadying the step-ladder so the helper could drill. The appliance was defective as it was short circuited.

The court charged the jury as follows: "To establish actionable negligence, the plaintiff is required to show by the greater weight of the evidence, first, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they were placed, proper care being that degree of care which a reasonably prudent man would exercise under like circumstances and charged with a like duty; and,

second, it must appear that such negligent breach of duty was the proximate cause of the injury, the cause that produced the result in continuous sequence and without which it would not have occurred and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed. (A) Now, gentlemen of the jury, if you find from the evidence, and by its greater weight, the burden being on the plaintiff to so satisfy you, that the drill with which the plaintiff was directed to do his work, was out of repair and that it had a short circuit and that the defendant had been notified of its condition prior to the time of the occurrence or that the defendant could have by the exercise of ordinary care and by inspection have discovered its condition and you find from the evidence that it did not make the necessary repair, and that said machine was defective in that it had a short circuit and you find that was the proximate cause of the injury to the plaintiff, you would answer the first issue 'Yes.' If you do not so find, you would answer it 'No.' (B)." It will be noted that the charge uses "foreseen"—it is more liberal than the rule in this jurisdiction, which is as follows: In *Hudson v. R. R.,* 176 N. C., p. 492, *Allen, J.,* confirming the above rule, says: "To which we adhere, with the modification contained in *Drum v. Miller,* 135 N. C., 204, and many other cases, that it is not required that the particular injury should be foreseen, and is sufficient if it could be reasonably anticipated that injury or harm might follow the wrongful act." See *DeLaney v. Henderson-Gilmer Co.,* 192 N. C., at p. 651.

We will repeat the law in this jurisdiction, reiterated recently in *Ellis v. Herald Co., ante,* at p. 264-5: "It is well settled that an employer is not a guarantor or an insurer of the safety of the place of work or of the machinery and appliances of the work. But it is the positive duty of the employer, which is primary and nondelegable, in the exercise of ordinary or reasonable care to furnish or provide his employee a reasonably safe and suitable place in which to do his work, and reasonably safe and suitable machinery and appliances. If there is a failure in this respect, and such failure is the proximate cause of any injury to an employee, the employer is liable," citing cases. *Cable v. Lumber Co.,* 189 N. C., 840; *Riggs v. Mfg. Co.,* 190 N. C., 256; *Lindsey v. Lumber Co.,* 190 N. C., 844; *Hall v. Rhinehart,* 191 N. C., 685; *Fowler v. Conduit Co.,* 192 N. C., 14; *Watson v. Tanning Co.,* 192 N. C., 790.

The defendant excepted and assigned error to the charge between "A" and "B" and contends that the charge places an absolute liability upon the defendant, after the discovery of a defect in machinery or appliances, and it is in contravention of the well settled law. We think defendant's contention is too attenuated and technical when the entire

charge on the subject of negligence is considered and applied to the facts in this particular case and all of the charge on this particular aspect.

In *Womble v. Grocery Co.,* 135 N. C., at p. 486, it is said: "In regard to the second proposition, regarding the duty of inspection, we are of opinion, both upon reason and authority, that a failure to inspect an elevator approaches very near, if it does not constitute, negligence. The law is fully and ably discussed in Labatt on Master and Servant, chapter 11. 'Negligence on the part of the master may consist of act of omission or of commission, and it necessarily follows that the continuing duty of inspection and supervision rests on the master. It will not do to say that, having furnished suitable and proper machinery and appliances, the master can thereafter remain passive so long as they work well and seem safe. The duty of inspection is affirmative and must be continuously fulfilled and positively performed. Anything short of this would not be ordinary care. The duty of inspection being a positive and affirmative duty, to be continuously performed by the defendants, the Court could not say as a matter of law how often such inspection should have taken place, or that it was proper to omit it at some particular time. It was for the jury to say whether the defendants had used reasonable care in this respect. *Houston v. Brush, supra* (66 Vt., 331); Labatt, 157.'"

. In *Cotton v. R. R.,* 149 N. C., at p. 230, the principle applicable is thus stated: "In respect to instrumentalities provided by the master for the use of the servant, the latter, in order to establish his case, must show: 1. That the implement furnished by the master was, at the time of the injury, defective. 2. That the master knew of the defect or was negligent in not discovering it and making the needed repairs. 3. That the defect was the proximate cause of the injury. *Hudson v. R. R.,* 104 N. C., 491; *Shaw v. Mfg. Co.,* 143 N. C., 131; *R. R. v. Barrett,* 166 U. S., 617. We may omit any reference to the duty of the servant to inform the master of any defect found by him, as there is no evidence in this case that fixes the plaintiff with any knowledge of the alleged defect in the truck, either in law or in fact. There is another duty the master owes to his servant and that is to inspect, at reasonable intervals of time, the implements he furnishes for use by his servant. 1 Labatt M. & S., sec. 154 and 157; Bailey's Pers. Inj., sec. 2638; *Leak v. R. R.,* 124 N. C., 455. At what intervals this inspection should be made, will depend upon the kind of implement used and special facts and circumstances of the case." *Shaw v. Handle Co.,* 188 N. C., 222. In the *Cotton case, supra,* the plaintiff was injured when the wheel of a truck came off. See Thompson Commentaries on the Law of Negligence (White's Sup.), Vol. 8, sec. 7681 note.

The agency used in the operation of the drill was electric current. As was said in *McAllister v. Pryor,* 187 N. C., at p. 836: "Electricity is recognized as an invisible force, subtle, with dangerous characteristics. It is important to encourage the use of the electric appliances, but it is necessary that this invisible and subtle force shall be carefully guarded."

In *Mincey, v. R. R.,* 161 N. C., at p. 471-2, it is said: "It appears that plaintiff could not discover the defect in the ladder by an ordinary inspection or such as he could have made in the use of it; but the railroad company knew of its defectiveness and that it was not suitable for the use to which it was to be applied. It must, therefore, answer for the resultant damage. *Stark v. Cooperage Co.,* 127 Wis., 322."

If notified, it was the duty of defendant in the exercise of ordinary care to remedy the defect; or if in the exercise of ordinary care by inspection the defendant could have discovered the defect, it was defendant's duty to remedy it. A failure of duty in either respect, if the proximate cause of the injury, cast liability on the defendant.

The evidence was sufficient to submit both aspects to the jury. There was evidence to the effect that defendant, in the exercise of ordinary care, by inspection could have discovered the defective condition and did not remedy it. This aspect was properly submitted to the jury. Conceding, but not deciding that the first aspect, although construing it with the entire charge was not in technical legal parlance, yet, taking the whole charge together, we cannot hold it reversible error. Defendant put in plaintiff's hands an appliance operated by electric current. This powerful agency, when not properly confined and guarded, is dangerous and deadly. "It passes unseen, unheard, odorless and without any warning of its danger." It is said in *Mitchell. v. Electric Co.,* 129 N. C., at p. 169: "In behalf of human life and the safety of mankind generally, it behooves those who would profit by the use of this subtle and violent element of nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition." The undisputed evidence was that plaintiff's helper was shocked by an electric current which caused him and the drill to fall on the plaintiff. The employer had control and management of the appliance that was furnished the employee. The electric current that shocked was some evidence of the defect, that the defendant by the exercise of ordinary care by inspection knew or ought to have known, sufficient to make a case of prima facie negligence. The principle of *res ipsa loquitur* applies. *Houston v. Traction Co.,* 155 N. C., 4; *Ridge v. R. R.,* 167 N. C., at p. 518; *Dunn v. Lumber Co.,* 172 N. C., 129; *White v. Hines,* 182 N. C., 275; *Modlin v. Simmons,* 183 N. C., 63; *Hinnant v. Power. Co.,* 187 N. C., 292; *McAllister v. Pryor, supra.* "The maxim *res ipsa loquitur* applies in many cases, for the affair speaks for itself.

It is not that in any case negligence can be assumed from the mere fact of an accident and an injury, but in these cases the surrounding circumstances which are necessarily brought into view, by showing how the accident occurred, contain without further proof sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof that the injured person is able to offer or that it is necessary to offer." Sh. and Redf. on Negl., sec. 59. *Shaw v. Public Service Corp.,* 168 N. C., p. 618.

In *Ramsey v. Power Co.,* 195 N. C., at p. 791, it is said: "The deceased was in charge of the washing machine; he had gone into the house and had returned when a colored woman told him the motor was smoking. He took hold of the switch with his right hand, said 'Lord have mercy,' quivered, shook, caught the wire with his left hand, 'crumpled up against the washing machine,' and instantly died. These circumstances, if accepted by the jury, were sufficient to make a case of prima facie negligence against the Power Company, subject of course to any explanation it should make, or in the absence of explanation to the hazard of an adverse verdict," citing cases.

As to the next objection of defendant, as to the evidence that shortly before plaintiff was injured and at a remoter period, defendant was notified of the defect by others being shocked by the same appliance that caused plaintiff's injury, we think this evidence relevant and competent.

"Injuries to others in defendant's employ, or other accidents resulting in such injuries, are admissible, if they have any tendency to prove the issue and if there is a substantial similarity in the essential conditions. Such evidence has been held admissible to prove the cause of the accident, the defective or dangerous condition, and defendant's knowledge of or duty to know such condition, and his failure to use the care required under the circumstances. If the relevancy of the evidence or similarity of conditions is not shown, the evidence is not admissible." 39 C. J., at p. 1023, part sec. 1233. See *Dorsett v. Mfg. Co.,* 131 N. C., 262; *Leathers v. Tob. Co.,* 144 N. C., p. 330; *Russ v. Harper,* 156 N. C., p. 444; *Deligny v. Furniture Co.,* 170 N. C., p. 189.

The last material assignment of error is to the charge of the court below: "He is entitled to recover a fair compensation for past and prospective losses resulting from the defendant's wrongful and negligent act and these may embrace loss of time, loss from inability to perform physical labor or capacity to earn money and for actual suffering of body and mind which are the immediate and necessary consequences of the injury complained of and which were caused by the negligence of the defendant, the burden being upon the plaintiff to satisfy you by evidence that the injury was caused by the negligence of the defendant

and that such negligence was the proximate cause of his injury. (E) He is entitled to recover nothing by way of punishment. In considering what is a just compensation for substantive damages, if you should find he has been permanently injured, you have a right to consider his reduced capacity to earn a living and if you should find his capacity has been reduced in consequence of the injury and in considering it, you have the right to consider his expectancy of life, and having determined what the expectancy is, he would be entitled to recover the present net value of the difference between what he would have earned and what he is able to earn in his present condition (F)." The assignment of error is to the charge between "E" and "F." There was some evidence of a permanent injury which warranted the charge of the court below on that aspect. We think the entire charge is borne out by the authorities in this jurisdiction. *Wallace v. R. R.,* 104 N. C., p. 451; *Rushing v. R. R.,* 149 N. C., 158; *Fry v. R. R.,* 159 N. C., at 362; *Murphy v. Lumber Co.,* 186 N. C., 746; *Shipp v. Stage Lines,* 192 N. C., 475; *Inge v. R. R.,* 192 N. C., 522.

If the defendant desired fuller instruction, or in any special way, it should have asked for an instruction sufficient to present its view or so as to direct the attention and consideration of the jury more pointedly to that particular phase of damage which defendant desired to present. *Murphy v. Lumber Co., supra; Dulin v. Henderson-Gilmer Co.,* 192 N. C., 638.

As to the other assignments of error, we can find no new or novel proposition of law or any error committed by the court below. The whole case indicates that the able and learned judge in the court below tried the case with much care. We find in law

No error.