## WOMBLE v. GROCERY CO.

(Filed May 17, 1904).

1. NONSUIT—*Negligence.*

   In this action for personal injuries, the evidence of the negligence of the defendant is sufficient to be submitted to the jury.

2. NEGLIGENCE—*Personal Injuries.*

   In an action for injuries caused by the falling of an elevator, the falling thereof without some apparent cause is evidence of negligence in its original construction.

3. NEGLIGENCE—*Master and Servant.*

   In an action for injuries caused by the falling of an elevator, a failure to inspect the same for eighteen months is evidence of negligence.

4. ASSUMPTION OF RISK—*Negligence—Contributory Negligence.*

   A servant employed to operate a freight elevator does not assume the risk of injury owing to a fall of the elevator, in the absence of knowledge of any defect therein, and of any duty to inspect it.

5. ASSUMPTION OF RISK—*Issues—Negligence.*

   In an action for injuries to a servant, contributory negligence is an affirmative defense, and any issue thereon must be tendered by defendant in order to be available.

ACTION by W. C. Womble against the Merchants Grocery Company, heard by *Judge W. R. Allen* and a jury, at February Term, 1903, of the Superior Court of GUILFORD County.

The plaintiff alleged that the defendant company was engaged in the wholesale grocery business in the city of Greensboro, receiving and shipping large quantities of groceries and other goods, which were kept and stored in their

store-house in said city; that said store-house was four stories
high, in which there was an elevator for the purpose of carry-
ing goods to the different floors and lowering them to the
first floor for delivery and shipment. · That plaintiff was
employed by defendant, and among other duties required of
and imposed upon him was that of transferring from floor
to floor goods as aforesaid by the use of the elevator; that
said elevator was furnished by the defendant company. That
the said elevator was defective in its construction and unsafe
for the purposes for which it was used; that the defendant
negligently failed to examine and inspect it, and that by rea-
son thereof the defendant failed to ascertain its defective con-
dition.    That on the 31st day of August, 1900, while engaged
in the work imposed upon him by the defendant, and not
knowing of any defect in the elevator, plaintiff went upon
said elevator in the discharge of his duty at the fourth floor
of the said store; that by reason of its defective condition
the cable or rope pulled out of its fastening, thus separating
the elevator from the weight by which it was pulled, and by
falling to the basement floor the plaintiff suffered serious
injuries.    The defendant denied the material allegations in
the complaint, and alleged that the injuries sustained by the
plaintiff was incident to the risk assumed by him in his
employment, and that the proximate cause of such injury was
the negligence of the plaintiff.    The Court submitted the
following issues to the jury: (1) "Was the plaintiff injured
by the negligence of the defendant?"    Answer.    "Yes." (2)
"If so, what damage has plaintiff sustained?"    Answer.
"Three thousand dollars."

   From a judgment upon the verdict the defendant appealed.


   *Scales, Taylor & Scales,* for the plaintiff.
   · *W. P. Bynum, Jr.,* and *King & Kimball,* for the
defendant.

CONNOR, J.  The defendant having demurred to the evidence and moved for nonsuit, its first exception is directed to the refusal of his Honor to sustain the motion.  The plaintiff testified, in substance, that he entered the employment of the defendant on January 20, 1899, coming to Greensboro from Chatham County where he had lived up to that time; that he was hired to truck freight and handle goods.  That the goods were trucked on different floors and carried from one floor to another on an elevator.  That he had seen one or two elevators before entering the service of the defendant, but had never been on one and had never seen one work.  In about a month after he entered the service of the defendant it removed its stock of goods to another building, and that the elevator by which he was injured was put into the building to which the defendant moved; that the elevator was a large one run by a wire cable; that it would run with good speed; that a rope was used in pulling the elevator up, and there was a cable that ran over a pulley; that there was a weight in a box two feet by six inches at the back of the elevator on the side of the wall, and that the box ran from the upper floor to the bottom of a five-story building, counting the basement, and that the weight ascended and descended; that it ran to the fourth story; that goods were carried up from one floor to the other by this elevator, and that when the elevator was loaded the plaintiff would get on it and pull it up; that at the time he got hurt he usually rode on the elevator; a man who wanted to carry goods from one floor to another generally got on the elevator and rode up, if there was not too many goods on the elevator, and that sometimes as much as two thousand pounds was put on, and that it was his duty to carry the goods from one floor to another, and that he did as others, rode on the elevator; that the proprietors and others rode on it; that he was certain he had ridden on the elevator

with the president of the company; that no one had told him not to ride on the elevator. That on the day he was hurt there was six hundred pounds of goods on the elevator besides his own weight; this was a very small load. There was no understanding with him about inspecting the elevator, and it was no part of his duty to do so; that there was another man in the house that did more of that kind of work than the plaintiff; the elevator was never inspected while he was at work for the defendant, to his knowledge, that he knew of no defect in it. There was a stairway leading from one floor to another which was constantly used, and he had the option of going up and down the elevator, and rode on it of his own volition, and for the reason that everybody else rode on it; he did not ride on it all the time, sometimes walked down the steps, sometimes rode on the elevator, being merely a matter of choice; that he had been operating this elevator from the time it was put up early in 1899 to August, 1900, and that it was a new elevator. The box containing the weight ran alongside of the wall and extended from the basement floor up as high as the plaintiff's head above the fourth floor, and that there was an open space in the box near the top and above the fourth floor, but that he had never noticed as to whether the condition of the weight and its fastening to the cable could be seen through this opening at the top of the box when the elevator car was at the bottom floor. The cable was a wire rope, composed of several strands of wire, and was about three-quarters of an inch in diameter, but he did not know how it fastened to the weight. That at the time of the accident he took off the brake and the elevator fell from the fourth floor to the basement; that this took place when he stepped on the elevator and released the brake.

A witness introduced by the plaintiff testified that he was booker for the defendant at the time of the injury in question; that the goods were taken to their proper place by the

elevator, and brought down in the same way when shipped. That the plaintiff's duties were to take the list of goods given him by the shipping clerk and get the goods out and bring them to the front door and put them on the dray. The elevator was not used by the officers of the company, but he believed he had seen Simpson go up on the elevator, but not often; it was a freight elevator; that investigation was made by the company as to the cause of the falling of the elevator and witness could see where the planks were rough or uneven. After the accident witness noticed fastening of the cable to the weight, and the cable was fastened by running through an eye in the weight and running back about eighteen inches, and the lapped portions were fastened with four clamps screwed together with bolts and nuts; that one clamp held the cable ends together and another fastened between that and the weight; that when witness first saw clamps after accident they seemed to be all right and seemed to be securely fixed together; but the rope had slipped through; that the clamps were not loose; that the end of the cable was frayed; that the same clamps were used in fastening the cable back to the weight after the accident.

Defendant's first contention is that upon the plaintiff's evidence his Honor should have dismissed the action. This contention presents the inquiry whether there was any evidence that the elevator was defective in its original construction or had become so by use, and whether there was any evidence of negligence in failing to inspect the elevator.

We approve the instruction given by his Honor in respect to the duty of the employer to furnish to his employee safe machinery and appliances. "When one enters the service of another it becomes the duty of the employer to provide safe appliances for his use. It also becomes the duty of the employee from time to time to give inspection to these appliances and to see that they are kept in proper repair. It is

not the duty of the master to provide the safest and newest or best appliances, but the duty which the law imposes upon him is that he furnish reasonably safe appliances, such as are in general use, and that he give such inspection to them as, from the nature of the appliances and the circumstances connected therewith, a man of ordinary prudence and judgment would have given." This charge is amply sustained by the authorities. Labatt Master and Servant, section 14, and cases cited. The principle as applied to elevators used by employees is thus stated by the author of that very excellent work: "An employer may be held liable if the safety devices which he is bound to provide for an elevator designed for the use of his servants prove defective. The employer must also respond in damages if an elevator, which is either conducted specially for the conveyance of the servants or which, though constructed primarily for the carriage of freight, is also used with his acquiescence for the conveyance of servants, is in any other way abnormally dangerous to use." Labatt Master and Servant, section 91; *Boot Co. v. Jerman,* 93 Md., 404, 86 Am. St. Rep., 428; *Chesson v. Lumber Co.,* 118 N. C., 59. The defendant, not controverting the duty which it owed to the plaintiff, insists that there is no evidence in the record proper to be submitted to the jury tending to show a breach of duty; that his Honor should, in response to its motion, have dismissed the action. It will be observed that the complaint avers negligence in that, first, the elevator was defective in its original construction; and, second, that the defendant negligently failed to inspect it; that an inspection would have shown the defective condition of the cable, etc. His Honor could not have dismissed the action because it is conceded that the elevator has been in use eighteen months, during which time the defendant had made no inspection. The motion was therefore properly refused. The defendant, however, excepts to his Honor's charge, for

the same reason upon which the motion to nonsuit the plaintiff is based. His Honor having instructed the jury in respect to both aspects of the case, and the issue being general in its terms, if there is error in the charge in either aspect, the defendant would be entitled to a new trial. This Court could not see upon which view the jury found their verdict. *Pearce v. Fisher,* 133 N. C., 333. This therefore presents the question whether there was any evidence of a defective construction of the elevator. His Honor instructed the jury that the burden of proof was upon the plaintiff— that he must show to them by the greater weight of the evidence that there was negligence on the part of the defendant, and that such negligence was the proximate cause of the injury. The elevator was operated by a wire cable which ran over a pulley; there was a weight in a box two feet by six inches at the back of the elevator on the side of the wall, and this box ran from the bottom to the upper floor; the weight ascended and descended as the elevator ascended and descended. A rope was used in pulling the elevator up. The cable was fastened to the weight, went through an eye, and lapped back some eighteen inches; the weight had torn some places in the shaft or box more than at other places; the marks were fresh; the shaft was boxed up all the way except a few feet at the top; shaft was made of rough, uneven planks. The lapped portion of the cable was fastened with four clamps screwed together with bolts and nuts; one clamp held the cable ends together and another fastened between that and the weight. The clamps after the accident seemed to be all right, and seemed to be securely fixed together, but the rope had slipped through; the clamps were not loose; the end of the cable was frayed. The same clamps were used in fastening the cable back after the accident. The plaintiff insists that this testimony entitled him to go to the jury upon the allegation of a defective construction of the elevator. He

relies upon the principle announced by *Gaston, J.,* in *Ellis v. Railroad,* 24 N. C., 138, that, although the burden is on the plaintiff to show negligence causing damage, when he shows damage resulting from the act of the defendant, which act with the exertion of proper care does not ordinarily produce damage, he makes out a *prima facie* case of negligence which cannot be repelled but by proof of care or of some extraordinary accident which renders care useless." This principle has been frequently applied in this State. *Aycock v. Railroad,* 89 N. C., 321, and other cases. Applied to actions of this character the doctrine is thus stated by Labatt, section 834: "The rationale of this doctrine (spoken of in the cases as *res ipsa loquitur*) is that in some cases the very nature of the action may of itself, and through the presumption it carries, supply the requisite proof. It is applicable when under the circumstances shown the accident presumably would not have happened if due care had been exercised. Its essential import is that, on the facts proved, the plaintiff has made out a *prima facie* case, without direct proof of negligence. * * * The doctrine does not dispense with the rule that the party who alleges negligence must prove it. It merely determines the mode of proving it, or what shall be *prima facie* evidence of negligence." While it is true that the courts uniformly hold that a person or corporation operating an elevator for passengers are held to the highest degree of care, the same as common carriers, whereas one operating a freight elevator upon which employees ride in the discharge of their duty are held to a lower degree of care, this distinction does not affect the application of the doctrine of *res ipsa loquitur.* *Houston v. Brush,* 66 Vt., 346. Actions for injuries in either case are founded upon the averments of negligence—a breach of duty—the mode of proof may be the same. It may be that exculpatory evidence would be different. A defendant might be exonerated by showing a

degree of care in one case which would be insufficient in the other. It is by no means clear that in employment where human life is concerned and exposed, the distinction in regard to the degree of care is well founded. "When an accident has occurred, and the physical facts surrounding are such as to create a reasonable probability that the accident was the result of negligence in such case, the physical facts themselves are evidential and furnish what the law terms evidence of negligence in conformity with the maxim *res ipsa loquitur.*" *Houston v. Brush,* 66 Vt., 331.

In the note to *Huey v. Gahlenbec,* 6 Am. St. Rep., 792, the annotator says: "In such case, however, it is hardly accurate to say that negligence is presumed from the mere fact of the injury, but rather that it may be inferred from the facts and circumstances disclosed in the absence of evidence showing that it occurred without the fault of the defendant. Such a case comes within the principle of *res ipsa loquitur;* the facts and circumstances speak for themselves, and in the absence of explanation or disproof give rise to the inference of negligence." The doctrine is well illustrated in the case of *Houston v. Brush, supra,* the Court, *Thompson, J.,* after discussing the authorities and the reason upon which the doctrine is based, saying: "In the case at bar the defendants owed the requisite duty to the plaintiff to bring the case within the rule. It is evident that the accident would not have occurred if the pin had not worked out so as to cause the wheel to fall. For aught that appears, the pin would not have worked out if it had been securely fastened into the block when the block was first attached to the derrick and had been subsequently kept in that condition. It is not claimed that the pin could not have been fastened into the block so that it could not have worked out as it did. It did not appear that any new force or unforeseen or purely accidental occurrence intervened to remove the covering from

the head of the pin, thus causing the accident, but it occurred while the derrick was being put to its ordinary use.    *    * It was under the care and management of themselves (defendants) and their servants.    The working out of the pin was an accident which, in the ordinary course of things, does not occur if those who have the care and management of a derrick use proper care.    The case standing thus, we think the jury had a right to consider the fact that the pin came out as it did, and from it draw the inference that the defendants had failed to exercise ordinary care."

In *Boot Co. v. Jumar, supra,* the Court said: "If the jury believed that maintaining the sheathing over the elevator, and especially over the portion of it where the shifting ropes were located, made its operation in that condition dangerous, that was itself a defect that might have been discovered by the use of ordinary care and diligence in inspecting the elevator."

In *Windleman v. Colladay,* 88 Md., 78, the plaintiff, an employee, was injured by the falling of a dumb-waiter through a shaft running from the first to the fifth floor.    The fall was occasioned by the breaking of the rope holding the dumb-waiter, but there was no evidence to show how or why the rope broke.    It was held that the jury were authorized to infer from the fall of the dumb-waiter, unexplained, that the injury was caused by the negligence of the defendant in not providing safe appliances."    The Court said: "When something occurs which, in the ordinary course of events would not occur without negligence, then the familiar doctrine of *res ipsa loquitur* is applied.    This doctrine is particularly applicable to cases in which bodies fall, and fall in places where they are liable to do injury."

In this case the contention was made that the doctrine of *res ipsa loquitur* did not apply between master and servant. It was rejected, the Court saying: "No authority was cited for this contention in the Court below and none can be

found." *Howser v. Railroad,* 80 Md., 148, 27 L. R. A.,
151, 45 Am. St. Rep., 332; *Malcairus v. Janesville,* 67 Wis.,
page 25; *Posey v. Scoville,* 10 Fed. Rep., 140.  In *Guloch
v. Edelmeyer,* 15 Jones & S., 292 (88 N. Y., 645), it was
held that "when an elevator fell without any apparent cause
and injured the plaintiff, as ordinarily an elevator properly
constructed and properly managed does not fall, and as that
elevator did fall, the presumption is that there was something
wrong either with the elevator or with the management of it,
and that presumption would warrant a verdict for the plain-
tiff unless it were rebutted by the defendant's evidence."
The doctrine was applied in *Griffin v. Railroad,* 148 Mass.,
143, 1 L. R. A., 698, 12 Am. St. Rep., 526, to the unex-
plained spreading of the coupling link resulting in the separ-
ation of cars causing injury to an employee.  It is said that
while, either from the facts connected with the transaction,
the manner in which the links spread, their appearance after
the accident, or other circumstances, the jury could find that
there was no negligence, yet the plaintiff was entitled to go
to the jury.  In *Folk v. Schaffer,* 186 Pa., 253, the injury
was caused by the knot of a rope becoming untied and slip-
ping.  "There was no direct evidence of want of care in
tying the knot, and the conclusion that it was improperly
tied was an inference from the fact that it became untied.
Ordinarily an accident would not have happened as this did
if care had been exercised in tying the ropes.  There was no
difficulty in making them secure.  Under the circumstances
shown by the plaintiff the burden was thrown on the defend-
ant to show that due care had been used, and in the absence of
any explanation the jury might infer want of care.  The de-
fendants were not required to satisfactorily explain the cause
of the accident, but they were bound to rebut the presump-
tion of negligence arising from the attendant circumstances."

*Threadwell v. Whittier,* 80 Cal., 574, 5 L. R. A., 498, 13 Am. St. Rep., 175; *Springer v. Ford,* 189 Ill., 430, 52 L. R. A., 930, 82 Am. St. Rep., 464. In *Kearney v. Railroad,* 5 L. R. (Q. B.), 411, *Cockburn, C. J.,* says: "Now we have the fact that a brick falls out of this structure and injures the plaintiff. The proximate cause appears to have been the looseness of the brick and the vibration of the train passing over the bridge acting upon the defective condition of the brick. It is clear therefore that the structure in reference to this brick was out of repair. It is clear that it was incumbent on the defendant to use reasonable care and diligence, and I think the brick being loose affords *prima facie* a presumption that they had not used reasonable care and diligence." *Scott v. Dock Co.,* Com. Law Rep. (N. S., 134, 320). In the light of the foregoing and many other authorities, his Honor correctly submitted the question of the defective construction of the elevator to the jury. It appears that the weights which should have ascended and descended, free from obstruction or unnecessary friction, struck against the sides of the box or shaft until they produced the condition described by the witness. The shaft or box was made of rough, uneven planks; how far this contributed to the rope slipping was for the consideration of the jury. They may well have found that in such respect the elevator, which includes all of its parts, was defective in its construction. The principle of *res ipsa loquitur* in such cases carries the question of negligence to the jury, not relieving the plaintiff of the burden of proof, and not, we think, raising any presumption in his favor, but simply entitling the jury, in view of all the circumstances and conditions as shown by the plaintiff's evidence, to infer negligence and say whether upon all of the evidence the plaintiff has sustained his allegation. His Honor, in view of this principle, correctly said to the jury in response to defendant's request: "Negligence on the part

of defendant is not to be inferred from the mere fact that an accident occurred, and that in consequence thereof the plaintiff was injured," etc. In regard to the second proposition, regarding the duty of inspection, we are of opinion, both upon reason and authority, that a failure to inspect an elevator approaches very near, if it does not constitute, negligence. The law is fully and ably discussed in Labatt on Master and Servant, chapter 11. "Negligence on the part of the master may consist of acts of omission or of commission, and it necessarily follows that the continuing duty of inspection and supervision rests on the master. It will not do to say that, having furnished suitable and proper machinery and appliances, the master can thereafter remain passive so long as they work well and seem safe. The duty of inspection is affirmative and must be continuously fulfilled and positively performed. Anything short of this would not be ordinary care. The duty of inspection being a positive and affirmative duty, to be continuously performed by the defendants, the Court could not say as a matter of law how often such inspection should have taken place, or that it was proper to omit it at some particular time. It was for the jury to say whether the defendants had used reasonable care in this respect. *Houston v. Brush, supra;* Labatt, 157. We have, after a somewhat exhaustive examination of the authorities, found no case in which a failure to inspect an elevator for more than four months has been held sufficient to excuse the defendant. Labatt, section 158, note 6—"Elevator." A plaintiff was permitted to recover for injury where the clamp to which a derrick guy rope was fastened was inspected only once a week. *Welch v. Cornell,* 63 N. Y., 44.

In *McGuigan v. Beatty,* 186 Pa., 329, a failure to inspect a rope which held the weight for six months was evidence of negligence, the Court saying: "In addition to this there was an entire absence of testimony that the defendant had ever

inspected the rope, and the absence of such proof affords an inference that the duty to inspect had been neglected." "An elevator needs, and should have, constant care and inspection. The friction of the rope is constantly wearing the strands and when they part it is necessarily weakened." *Bier v. Mfg. Co.,* 130 Pa., 446. His Honor's charge in respect to the duty of inspection is in accord with the authorities. A careful examination of the entire charge shows that the principles given to the jury for their guidance and the contentions of the parties were stated with great clearness and accuracy. The defendant, however, says that the plaintiff assumed the risk incident to his employment in the use of the elevator, and that he was guilty of contributory negligence. The last defense, if sustained by any evidence, is not open to the defendant, as it tendered no issue upon the question. It is always an affirmative defense and the defendant carries the laboring oar. We find no evidence to sustain the plea if presented. Without discussing the question as to whether the doctrine known as assumption of risk comes within the same rule, we have no hesitation in holding that there is nothing in the evidence to sustain the defense. *Appleton, J.,* in *Buzzell v. Mfg. Co.,* 48 Me., 113, 77 Am. Dec., 212, says: "The employee assumes the risks, more or less hazardous, of the service in which he is employed, but he has a right to presume that all proper attention shall be given to his safety, and that he shall not be carelessly and needlessly exposed to risks not necessarily resulting from his occupation and preventable by ordinary care and precaution on the part of his employer." There is no suggestion that the plaintiff knew of any defect in the elevator or any of the appliances for its operation, or that any duty was imposed upon him to inspect it. There is no aspect of the evidence in which the plaintiff can be said to have assumed the risk incident to the negligence of the defendant. *Lloyd v. Hanes,* 126 N. C.,

359. The defendant's first prayer was properly refused because there was no evidence to sustain it. The sixth prayer was substantially given, the others were given as asked.

Upon a careful examination of the entire record and the defendant's exceptions and assignments we find no error. The judgment must be

Affirmed.