DEVIN, J., took no part in the consideration or decision of this case.
This was an appeal from an assessment made by the Commissioner of Banks of North Carolina against the defendant as the owner of 44 shares of the capital stock of the Morris Plan Bank of Greensboro, North Carolina, an insolvent banking corporation, organized under and prior to its insolvency, doing business by virtue of the laws of North Carolina.
The assessment was made under and by authority of section 13, Public Laws of North Carolina, 1927, as amended. N.C. Code of 1935, sec. 218 (c), subsec. 13. It was filed and docketed in the office of the clerk of the Superior Court of Guilford County on 2 March, 1934. The defendant appealed from the assessment to the Superior Court of Guilford County, as authorized by the statute.
At the hearing of the appeal, the parties filed with the court an agreed statement of facts, which is as follows:
"The parties hereto expressly waive trial by jury and agree upon the following facts, and further agree that the judge presiding at the trial of this cause may try the same, without a jury, upon said agreed statement of facts, and render judgment, subject to the rights of the parties, or either of them, to appeal to the Supreme Court, or otherwise seek a review of such decision; the facts agreed upon being as follows:
"1. On 2 December, 1916, Greensboro Morris Plan Company was created, organized, and came into existence as a corporation; a copy of its certificate of incorporation is hereto annexed, marked `Exhibit A,' and made a part hereof. On 21 April, 1920, the certificate of said corporation was amended so as to authorize an increase of capital stock; a copy of the amendment then made is hereto annexed, marked `Exhibit B,' and made a part hereof. On 19 October, 1921, the certificate of incorporation of said corporation was again amended so as to change the name to `The Morris Plan Industrial Bank of Greensboro'; a copy of the amendment then made is hereto annexed, marked `Exhibit C,' and made a part hereof. On 3 July, 1930, the certificate of incorporation of said corporation was again amended, and the name changed to `The *Page 812 
Morris Plan Bank'; a copy of the amendment then made is hereto annexed, marked `Exhibit D,' and made a part hereof. The defendant W. A. Hewitt consented to and signed the original of the last amendment to the certificate of incorporation, secured on 3 July, 1930.
"2. Shortly after the enactment of chapter 225 of the Public Laws of 1919, relating to Industrial Banks, and before 1 January, 1920, the president and secretary of said corporation filed with the Corporation Commission and the Secretary of State the notice required by said act to be recognized as an Industrial Bank and to come within the provisions of the said chapter of the Public Laws of 1919, and received from the Corporation Commission a license to do an industrial banking business; but it does not appear from the minutes of said corporation that the act of the president and secretary was or was not approved by the directors or stockholders of said corporation. After filing said notice and receiving said license the said corporation engaged in the business of an Industrial Bank until the banking holiday declared by the President in March, 1933. From time to time during said period of operation the said corporation published or caused to be published in newspapers published in the city of Greensboro advertisements by which it held itself out as doing an industrial banking business. Two typical copies of the advertisements published subsequent to 1 July, 1930, are attached hereto, marked `Exhibit E,' and made a part hereof.
"3. On 1 September, 1921, defendant W. A. Hewitt purchased eight (8) shares of stock in said corporation and paid therefor the sum of $800.00 to said corporation, whereupon a certain stock certificate, duly signed and executed, was issued and delivered to him; a copy of said stock certificate is hereto annexed, marked `Exhibit F,' and made a part hereof. On 2 January, 1924, the defendant W. A. Hewitt received two (2) shares of stock in said corporation as a 25 per cent stock dividend, whereupon a certain stock certificate, duly signed and executed, was issued and delivered to him, a copy of said certificate being hereto annexed, marked `Exhibit G,' and made a part hereof. On 15 January, 1925, the defendant W. A. Hewitt purchased eight (8) shares of stock in said corporation and had the same transferred to him on the books of said corporation, whereupon a certain stock certificate, duly signed and executed, was issued and delivered to him; a copy of said certificate, except as to number and number of shares, is hereto annexed, marked `Exhibit G.' On 24 January, 1924, the defendant W. A. Hewitt purchased fifteen (15) shares of stock in said corporation and had the same transferred to him on the books of said corporation, whereupon a certain stock certificate, duly signed and executed, was issued and delivered to him; a copy of said certificate, except as to number and number of shares, is hereto annexed, marked `Exhibit G.' On 20 February, 1924, *Page 813 
the defendant W. A. Hewitt purchased five (5) shares of stock in said corporation and had the same transferred to him on the books of said corporation, whereupon a certain stock certificate, duly signed and executed, was issued and delivered to him; a copy of said stock certificate, except as to number and number of shares, is hereto annexed, marked `Exhibit G.' On the date said corporation closed and the Commissioner of Banks took possession of it, as hereinafter set forth, defendant W. A. Hewitt was the owner of all of said shares of stock, totaling thirty-eight (38) shares, in said corporation, having continuously owned said shares of stock since his purchase of them as aforesaid.
"On 21 April, 1926, defendant W. A. Hewitt purchased three (3) shares of stock in said corporation from a stockholder to whom said shares had been issued by the corporation on or before 2 January, 1924, and had said shares transferred to him on the stock books of the corporation on or about 21 April, 1926, whereupon a certain stock certificate, duly signed and executed, was issued and delivered to him; a copy of said stock certificate, except as to number and number of shares, is hereto annexed, marked `Exhibit G,' and made a part hereof. On 15 March, 1928, defendant W. A. Hewitt purchased three (3) shares of stock in said corporation from a stockholder to whom said shares had been issued by the corporation on or before 2 January, 1924, and had said shares transferred to him on the stock books of the corporation on or about 15 March, 1928, whereupon a certain stock certificate, duly signed and executed, was issued and delivered to him; a copy of said stock certificate, except as to number and number of shares, is hereto annexed, marked `Exhibit G,' and made a part hereof. On the date said corporation closed and the Commissioner of Banks took possession of it, as hereinafter set forth, defendant W. A. Hewitt was the owner of both of said certificates of stock for a total of six (6) shares in said corporation, having continuously owned said shares of stock since his acquisition of them as aforesaid. That the par value of each share of stock is $100.00.
"4. Said corporation paid and defendant W. A. Hewitt received yearly dividends on each share of stock owned by him, from the date of its acquisition, as aforesaid, through the year 1932.
"5. When the national banking holiday was declared by the President in March, 1933, said corporation ceased to do an unrestricted business, and thereafter its business activities were restricted and curtailed.
"6. On 30 December, 1933, the directors of said corporation met and adopted a resolution, a copy of which is hereto annexed, marked `Exhibit H,' and made a part hereof, and immediately notified the Commissioner of Banks of the adoption of said resolution. On 1 January, 1934, the Commissioner of Banks of North Carolina caused to be filed in the office of the clerk of the Superior Court of Guilford County a notice of possession *Page 814 
of the assets of said corporation, a copy of which notice is attached hereto, marked `Exhibit I,' and made a part hereof.
"7. At the time the Commissioner of Banks filed notice of possession of the assets of said corporation, as aforesaid, said corporation was insolvent, and all of the amount for which the stockholders of said corporation are liable on account of any statutory liability, if any such liability exists, is needed to pay the obligations and liabilities of said corporation.
"8. On or about 2 March, 1934, the Commissioner of Banks caused an order levying a stock assessment against defendant W. A. Hewitt and all the other stockholders of said corporation to be filed and docketed in the office of the clerk of the Superior Court of Guilford County, in Judgment Docket Book 21, at page 39, et seq., a copy of the pertinent portions of said assessment order being hereto attached, marked `Exhibit J,' and made a part hereof.
"9. To the foregoing assessment the said defendant W. A. Hewitt excepted and appealed, notice of appeal being given as set out in the record.
"10. That the liabilities of the Morris Plan Bank of Greensboro on 1 January, 1934, the date on which the Commissioner of Banks took charge, were $247,705.21; that $59.29 of the said liabilities were contracted by the bank prior to 4 March, 1925; that $247,645.92 of said liabilities were contracted by the bank after 4 March, 1925.
"It is agreed that if upon the foregoing facts the court is of the opinion that the defendant appellant, W. A. Hewitt, is liable for said assessment, or any part thereof, the court may enter judgment therefor, and for the costs of this appeal; and if the court is of the opinion that he is not liable for said assessment, the court may enter judgment so declaring, and taxing the respondent with the costs; subject to the rights of either party to appeal to the Supreme Court."
On the foregoing agreed statement of facts, it was considered, ordered, and adjudged by the court that the plaintiff recover of the defendant the sum of $4,400.00, with interest from 2 March, 1934, and the costs of the action.
It was further considered, ordered, and decreed by the court that no part of the sum or sums recovered by the plaintiff of the defendant on account of said judgment shall be applied by the plaintiff to the payment of the indebtedness of the Morris Plan Bank of Greensboro, due on 1 January, 1934, which was contracted by said bank prior to 4 March, 1925.
From said judgment the defendant appealed to the Supreme Court, assigning errors in the judgment. *Page 815 
There is no error in the judgment in this action. The judgment is supported by the facts agreed, and by a proper construction of the statute applicable to these facts.
Under the provisions of section 1, chapter 121, Public Laws of North Carolina, 1925 (section 225 [o], N.C. Code of 1935), which became effective on 4 March, 1925, the defendant, as a stockholder of the Morris Plan Bank of Greensboro, N.C. owning 44 shares of its capital stock, of the par value of $4,400, is liable, individually, to the extent of the par value of the shares of stock owned by him at the date of the insolvency of said bank, for every contract entered into, for every debt incurred, and for every engagement made by said bank, since 4 March, 1925.
This statute was enacted by the General Assembly of this State in the valid exercise of its power to alter, by a general law or by a special act, the law under which the corporation was created in 1916. Const. of N.C. Art. VIII, sec. 1. The statute is applicable to the defendant in this action, notwithstanding the shares of stock owned by him are fully paid and nonassessable by the corporation. The statute does not affect, or purport to affect, the contract between the corporation and its stockholders with respect to the shares of its stock owned by its stockholder. The liability imposed by the statute upon the stockholders of an industrial banking corporation, organized and doing business under the laws of this State, is for the benefit of creditors of the corporation, and not for the benefit of the corporation itself. The effect of the statute is to impose upon every stockholder of an industrial banking corporation, organized and doing business under the laws of this State, a statutory liability to all persons who shall become creditors of the corporation, after its enactment. The validity of the statute as thus construed is sustained by the decision of this Court in Smathers v. Bank, 135 N.C. 410, 47 S.E. 493. In that case, speaking of chapter 298, Public Laws of North Carolina, 1897 (now section 219 [a], N.C. Code of 1935), the Court said: "We hold that the statute should not be so construed as to fix liability upon stockholders for debts contracted or made prior to the amendment of the charter or the statute. The subscription of stockholders constitutes the contract, and the extent of the liability as to debts already incurred is fixed by the terms of the charter as they then exist. Any change in the charter in this respect must be construed to operate prospectively, only. It is well settled that such liability as the stockholder assumes is contractual. Thus construed, we find no constitutional objection to the Act of 1897." *Page 816 
In this case, from 1921, when the corporation, by amendment to its certificate of incorporation, changed its name to "The Morris Plan Industrial Bank of Greensboro," to 1933, when the corporation, by action of its board of directors, placed all its assets in the hands of the Commissioner of Banks for liquidation, as authorized by statute, the defendant was a stockholder of said corporation. During this time the corporation was engaged in the business of operating an industrial bank, under the laws of this State. The defendant, by the judgment in this action, is required to discharge his statutory obligation to creditors whose debts were contracted after 4 March, 1925, and who relied, as they had a right to do, upon the provisions of the statute for protection in the event the corporation became insolvent. The judgment is supported by the statute, and is, we think, in accord with good morals.
Affirmed.
DEVIN, J., took no part in the consideration or decision of this case.