ANNA PEARL BUIE, ADMINISTRATRIX OF R. B. BUIE, DECEASED, v. L. R. POWELL, JR., AND HENRY W. ANDERSON, RECEIVERS OF SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 1 February, 1939.)

1. **Master and Servant § 29—Plaintiff may not recover for death of intestate when intestate's own acts are the basis for the doctrine of respondeat superior under which recovery is sought.**

Plaintiff's intestate was section master in charge of a crew of workmen engaged in repairing and maintaining a section of defendant railroad company's track, and died as a result of injuries received when the dump car was derailed, jerking the connecting rod loose from the motor car, causing the motor car, released from the load of the dump car, to throw intestate therefrom and strike him. Plaintiff did not contend that the dump car and motor car were defective, but that the equipment was too light and was inadequate for the quantity of angle-bars hauled, and that the condition of the track aggravated the danger. *Held:* Intestate was in charge of the maintenance of the track, and the loading of the cars, and therefore plaintiff cannot hold defendant liable under the doctrine of *respondeat superior* when the very acts upon which the application of the doctrine is based were those of intestate.

2. **Master and Servant § 27: Negligence § 19c—**

In an action to recover for the death of a railroad employee in charge of track maintenance, resulting when a dump car under his supervision derailed, the doctrine of *res ipsa loquitur* does not apply, since intestate himself was responsible for the condition of the track and the equipment under his control.

3. **Master and Servant § 27—**

The scintilla rule of evidence is not recognized in actions under the Federal Employers' Liability Act.

APPEAL by plaintiff from *Sinclair, J.,* at August Term, 1938, of BLADEN. Affirmed.

This is a civil action to recover damages for the alleged wrongful death of plaintiff's intestate. The deceased was section master of the defendants and as such supervised a crew of workmen engaged in repairing and maintaining a section of defendants' trackage between Hamlet and Wilmington. Shortly prior to 12 April, 1937, the defendants had removed old crossties and old rail and replaced them with new ones. The major portion of the old crossties, angle-bars, rails and other discarded material was removed by a special crew. The superior officer of the deceased then directed the deceased to take his section crew, motor car and dump car and remove the remaining angle-bars. On 12 April, 1937, the deceased was engaged in this work. He had the dump car loaded and was proceeding along the track when the dump car was derailed. This jerked the connecting rod loose from the motor car. The deceased, who was operating the motor car, was thrown forward on one of the rails and the motor car, being freed from the load of the dump car, struck the deceased, inflicting fatal injuries.

At the conclusion of all the evidence the defendants renewed their motion to dismiss as of nonsuit first entered when the plaintiff rested. The motion was allowed and judgment was entered accordingly. The plaintiff excepted and appealed.

*Clark & Clark for plaintiff, appellant.*
*Varser, McIntyre & Henry for defendants, appellees.*

BARNHILL, J. The following statement appears in the appellant's brief: "We do not contend that the motor and dump cars were inadequate, defective or unusually dangerous equipment with which to perform the duties and do the work ordinarily incident to employment as a section master. But we do allege and contend that this equipment was inadequate, defective and dangerous when used for hauling angle-bars in quantity, as hauling, because:

"1. It was too light and fragile and the motive power too small for such heavy duty.

"2. There were no sides, standards, uprights or guards of any kind or any means by which the same could be attached so as to reasonably safeguard against the angle-bars falling off.

"3. The coupling was wholly insufficient for carrying such a load.

"4. This was not the equipment approved and in use by railroads generally for doing this work.

"5. These dangers were aggravated by the condition of the track at the point of derailment."

It affirmatively appears in the record that the deceased was section master and that it was his duty to repair and maintain the track in good

condition. It further appears that he was furnished with a motor car and dump car to be used in connection with his work in hauling material to be used in the repair of the tracks and old material discarded in making such repairs; that it was the kind in general use; that he was in complete control of the motor car and dump car and possessed the right to call for and obtain such additional material or labor as was necessary to keep it in good repair; and that the dump car was loaded under his immediate supervision and direction.

If the derailment of the dump car and motor car was not purely accidental, but was caused by negligence, then it appears that it resulted from overloading, or defective coupling between the dump car and motor car, or a defective condition of the track, it appearing in evidence that there was a bad joint at or near the place of derailment, at which point the measurement between the rails was $1\frac{1}{2}$ inches wider than the standard. If the defendants are chargeable with negligence in any of the respects indicated, such negligence on their part arose out of the conduct of their vice principal and agent, the deceased. If the motor car and dump car were too light and fragile to bear the load placed upon it the deceased was responsible for the overloading. He had notice that the dump car had no standards or uprights or guards of any kind. Notwithstanding this he directed the loading in the manner now complained of. If the coupling was insufficient for carrying such a load he disregarded this fact and placed weight upon the dump car beyond its capacity. Likewise, it was his duty to keep the track in a condition of good repair. There is no evidence that the equipment furnished is not such as is approved and in use by railroads generally for doing this type of work. The plaintiff cannot be permitted to recover for the wrongful death of her intestate due to the negligent conduct of the defendants when the deceased himself was the person whose conduct tends to impose liability upon the defendants under the doctrine of *respondeat superior*. His estate would thus be benefiting through his wrong.

It becomes unnecessary, therefore, for us to discuss the question raised as to whether the derailment itself is evidence of negligence under the doctrine of *res ipsa loquitur*. We may call attention, however, to the fact that the cases cited and relied on by the plaintiff are not in point. In neither of these cases was the employee injured responsible for the condition of the track or the equipment. *Lynch v. New York, N. H. & H. R. R.* (Mass.), 200 N. E., 877, is very similar to the instant case, and is in point. It is there said: "The doctrine of *res ipsa loquitur* is not applicable to the case at bar because of the fact that the car and the tools upon it were under the exclusive control and management of Lynch at the time of the accident. . . . The maxim *res ipsa loquitur* does not apply where the accident might have been due to improper handling

as well as to improper furnishing the thing causing the accident. In cases decided by this Court where *res ipsa loquitur* has been held to apply, the thing which caused the injury was controlled by the defendant and not by the injured party."

There was no evidence of previous trouble in the operation of the motor car, none of defect in condition or adjustment, none of lack of proper inspection. If it is to be assumed that there was negligence in the lack of proper inspection or defect in condition the deceased was the active agency of such negligence.

Some contention is made here that it does not appear that the accident occurred on the section of trackage within the supervision of the deceased. Members of the crew testified that it was on this section. In any event, the burden was on the plaintiff and this action was instituted and is being maintained under the Federal Employers' Liability Act, under which the scintilla rule of evidence is not recognized. If there is a scintilla of evidence that this accident did not occur within the section of the deceased it is nothing more.

The judgment below is

Affirmed.