Argued September 14; affirmed October 10; rehearing denied
November 7, 1939

# STRAUB *v.* OREGON ELECTRIC RY. CO. ET AL.

(94 P. (2d) 681)

Department 2.

*Leo Levenson,* of Portland (K. C. Tanner, of Portland, on the brief), for appellant.

*Howard T. McCulloch* and *Hale McCown,* both of Portland (Carey, Hart, Spencer & McCulloch and Howard T. McCulloch, all of Portland, on the brief), for respondents.

BAILEY, J.  The plaintiff, John H. Straub, appeals from a judgment on the pleadings entered in favor of the defendants, Oregon Electric Railway Company and Spokane, Portland & Seattle Railway Company.

The facts alleged by the plaintiff in his amended complaint, as the same is further amended by stipulation of the parties, and those admitted in his reply are the following: The defendants own and maintain a certain lead track on Mill street in the city of Salem, from which lead track an industrial spur track extends to the plant of Paulus Canning Company. At the time of the accident which is the basis of this action by plaintiff for damages for personal injury, the plaintiff was "the switch foreman and conductor in charge of the operations then being conducted by him and the switch" crew, and it was his "duty to see that the work he was engaged in was performed in a safe manner". On September 16, 1937, the plaintiff was ordered and directed by the defendants to remove an empty car from the end of the spur track, which necessitated moving with it three other cars attached to the empty car. On the lead track immediately east of the spur track switch there were four other cars, which had been so placed, in order to clear High street, that the car nearest the switch "fouled" or impaired the clearance for passage of cars from the spur track onto the lead track.

In moving the cars from the spur track to the lead track it was necessary for the plaintiff, and he was required, to ride on a ladder attached to the side of the end, or "point", car. While the cars were being moved, some one in the vicinity of the tracks cried out a warning, and as the plaintiff turned to look back, to ascertain the reason for the warning, the car on which he was riding passed over the switch, and due to the insufficient clearance between that car and the one nearest the switch on the lead track the plaintiff's body came in contact with the latter car, which caused the plaintiff to be "brushed" or thrown from the ladder and severely injured.

The specific acts of negligence charged against the defendants may be summarized as follows: (1) placing the freight car on Mill street so that it left insufficient clearance to permit plaintiff to ride on the "point" car in safety; (2) failure to warn plaintiff of the "fouled" or insufficient clearance at the switch; (3) failure to place a man at the switch to signal the engineer of the engine moving cars from the spur to the lead track, to bring the engine to a stop before injuring the plaintiff; (4) moving the cars from the spur track at an unusual and unnecessary speed and without ascertaining and determining the "fouled" condition of the switch; (5) failure to stop the engine and the cars moving over the switch before the car on which the plaintiff was riding passed over it; (6) failure of the engine crew to keep a proper or any lookout as to the conditions prevailing at the switch, and to stop the cars; and (7) failure of the defendants to use every device, care and precaution practicable to prevent injury to the plaintiff, by failing to exercise due care in the particulars above noted.

In the amended complaint it is averred that at the time and place of the accident the plaintiff and the defendants "were engaged in work involving risk, hazard and danger within the meaning of the employers' liability act of the state of Oregon". The nature and extent of the plaintiff's injuries are also detailed, but need not be set forth here, as no question in that connection is raised on this appeal.

■■ It is urged by the appellant that a motion for judgment on the pleadings admits, as does a demurrer, all the facts well pleaded, and that when the pleadings present an issue of fact the motion ought to be denied. This as a general statement of the law is correct: *Bernert v. Multnomah Lumber & Box Co.*, 119 Or. 44, 247 P. 155, 248 P. 156; *Smith v. Aplanalp*, 126 Or. 213, 267 P. 1070; *Milton v. Hare,* 130 Or. 590, 280 P. 511. The respondents agree to the rule of law as above stated, but distinguish between a case in which there is an issue of fact that would, if resolved in the plaintiff's favor, support a judgment for him, and a case in which the complaint and reply affirmatively disclose that no valid judgment could be rendered for the plaintiff; and they assert that the instant case falls within the latter category.

In support of the judgment on the pleadings entered by the circuit court in their favor, the respondents assert that it appears from the allegations of the amended complaint and the reply that the appellant's negligence and his breach of the duty imposed upon him by the Oregon employers' liability act caused, or at least contributed to, the injuries of which he complains, and that therefore he cannot recover.

Since the defendants are corporations, their business necessarily must be conducted by employes to

whom responsibility is delegated. At the time of the accident the plaintiff was a member of the switching crew, of which he was foreman and conductor in charge of operations, and it was his duty to see that the work in which he and the crew were engaged was performed in a safe manner.

Turning now to the Oregon employers' liability act, we note that the first section thereof, § 49-1701, Oregon Code 1930, imposes upon all owners, contractors or sub-contractors and other persons having charge of or responsible for work involving risk or danger to employes the duty to use every care, device and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device. By § 49-1702, Oregon Code 1930, the manager, superintendent, foreman or other person in charge or control of the construction, work or operation or any part thereof is made the agent of the employer in all suits for damages for death or injury suffered by an employe. The duty of complying with the provisions of the act is imposed upon the owners, contractors or other persons having charge of the work, and for any failure to comply with the act the delinquent owner, contractor or other person in charge as agent, as defined in § 49-1702, *supra*, is, upon conviction, subject to punishment by fine or imprisonment, or both: § 49-1703, Oregon Code 1930.

In *Marks v. Bauers,* 3 Fed. (2d) 516, the plaintiff was the foreman of a rock-crushing plant and brought action against the defendant for damages for personal injuries which he sustained as the result of lack of safety appliances at that plant. The circuit court of appeals for the ninth circuit, after calling attention

to and quoting from the sections of the Oregon employers' liability act hereinabove referred to and pointing out especially the provision making it the duty of owners, contractors or other persons having charge of the work to see that the employers' liability act be complied with, said:

"That duty is by the statute distinctly placed upon each of those specifically mentioned, and all other persons having charge of the particular work, in precisely the same way and to precisely the same extent. Neither the owners nor the superintendent are by the statute made any more responsible for the construction or operation of the particular structure in question than the foreman. The duty so imposed upon each can no more be delegated by the one than by the other. Such being the statute of the state, the courts are bound by it."

It was therein held that since the plaintiff was the foreman of the rock-crushing plant and was therefore charged with the duty of seeing that the requirements of the employers' liability act were observed, he was not entitled to recover for injuries which he sustained through the defendant's failure to maintain proper safety appliances in such plant.

The case of *Schmidt v. Multnomah Operating Co.,* 155 Or. 53, 61 P. (2d) 95, is pertinent to the question now before us for decision. The plaintiff therein was injured through the operation of machinery that was not properly safeguarded. The evidence disclosed that he was the chief engineer of the defendant company and had been assigned the duty of repairing its machinery for cubing, shaving and crushing ice. Judgment was recovered by the plaintiff in the circuit court, but was reversed on appeal on the ground that the plaintiff could not avail himself of the provisions of the

employers' liability act, inasmuch as he was the foreman or chief engineer and was charged with the duty of seeing that the machinery was properly safeguarded. This court stated:

"It will be observed that in our employers' liability act foremen are expressly charged with the duty of seeing to it 'that the requirements of this act are complied with'. Its authors evidently believed that its objectives would be better achieved by imposing the duties created by it not only upon owners and contractors but also upon all vice-principals. The statute makes no distinction between the duty of the one and of the other. The duties of principal and of vice-principal are equal. The plaintiff, as the defendant's vice-principal, owed a statutory duty to see to it that the acts of negligence charged in the complaint did not occur. For a violation of his statutory duty he was subject to a penalty which, as the act states, 'shall not affect or lessen the civil liability of such persons', referring, among others, to vice-principals.

"It seems evident that one who has violated a statutory duty can not have a statutory right of action to secure redress. We believe that the federal circuit court of appeals, in Marks v. Bauers, *supra,* correctly construed our employers' liability act."

The opinion then goes on to say that if the ice-crushing machine could not have been safely operated or inspected without a guard, it was the plaintiff's duty to have the necessary guard installed before proceeding with his operations, and that he was under no duty to proceed until the machine had been made safe.

Another adjudication which has bearing upon the question to be decided is *Buie v. Powell,* 215 N. C. 67, 1 S. E. (2d) 102. In that case the plaintiff as administratrix of R. B. Buie, deceased, brought action to recover damages for the alleged wrongful death of her

intestate. The decedent was section master of the defendants' railroad and supervisor of a crew of workmen engaged in repairing and maintaining a section of defendants' trackage. His superior officer directed him to take his section crew, motor car and dump car, and remove certain angle bars. The decedent had the dump car loaded and was operating the motor car, propelling the dump car along the track, when the latter car was derailed and the connecting rod jerked loose from the motor car. The decedent was thrown forward on one of the rails, struck by the motor car and fatally injured.

In sustaining the judgment in favor of the defendants entered upon a directed verdict, the supreme court said:

"If the derailment of the dump car and motor car was not purely accidental, but was caused by negligence, then it appears that it resulted from overloading, or defective coupling between the dump car and motor car, or a defective condition of the track, it appearing in evidence that there was a bad joint at or near the place of derailment, . . . If the defendants are chargeable with negligence in any of the respects indicated, such negligence on their part arose out of the conduct of their vice-principal and agent, the deceased. If the motor car and dump car were too light and fragile to bear the load placed upon it the deceased was responsible for the overloading. He had notice that the dump car had no standards or uprights or guards of any kind. Notwithstanding this he directed the loading in the manner now complained of. If the coupling was insufficient for carrying such a load he disregarded this fact and placed weight upon the dump car beyond its capacity. Likewise, it was his duty to keep the track in a condition of good repair. * * *"

In the present instance the specifications of negligence on the part of the defendants as set forth in the

amended complaint are seven in number. The seventh or last charge appears to be a general summarization of the six preceding specifications of negligence, stated in an effort to bring the cause of action within the scope of the employers' liability act.

■ The plaintiff was the conductor and foreman of the switching crew, as alleged by him, and it was his duty to see that the work in which he and the crew were engaged was performed in a safe manner. In that capacity he had supervision over the engine crew engaged in switching operations. If the defendants were negligent in moving the cars from the spur track onto the lead track "at an unnecessary and unusual speed", if they were further negligent in failing to stop the engine before the car on which the plaintiff was riding was moved over the switch, or if they were still further negligent in that the engine crew failed to keep a proper lookout as to conditions prevailing at the switch and failed to stop the engine, then such acts of negligence must of necessity be charged to the plaintiff as the vice-principal of the defendants.

As already stated, the plaintiff alleged that it was his duty to see that the work in which he was engaged was performed in a safe manner. Therefore, it was incumbent upon him to make sure that there was sufficient clearance before causing the cars to be moved from the spur track onto the lead track. Under such circumstances, he cannot complain of the failure of the defendants to warn him of the defective clearance, or their failure to provide a signal man at the switch. We may well apply to the facts in this case the statement quoted from *Buie v. Powell,* supra, that, "If the defendants are chargeable with negligence in any of the respects indicated, such negligence on their part arose out of the conduct of their vice-principal and agent," the plaintiff.

■ At the close of his brief the appellant calls attention to and quotes § 62-1701, Oregon Code 1930, which is the first section of the railroad employers' liability act passed in 1903. He then asserts, without any citation of authority or supporting argument, that under the pleadings and in view of § 62-1701, *supra,* a cause of action in his favor is stated.. Section 62-1702, Oregon Code 1930, provides that "the rules and principles of law as to contributory negligence which apply to other cases shall apply to cases arising under this act, except in so far as the same are herein modified or changed." We find nothing in the act which can. be regarded as modifying or changing the law as to contributory negligence of a vice-principal such as the plaintiff was at the time of the accident. The 1903 act no more aids the plaintiff in his attempt to recover for his employers' negligence, while admitting himself a vice-principal, than do the sections of the Oregon employers' liability act which we have above discussed.

It was assumed in the briefs and during oral argument that the Oregon employers' liability act, §§ 49-1701 to 49-1707, inclusive, Oregon Code 1930, had application to railroad employes engaged in switching operations We do not, however, intend to intimate by our discussion of that act in reference to the facts in the present case that it does or does not apply to such employes, inasmuch as that question is not directly presented on this appeal.

The conclusion is irresistible, in the light of the facts which the plaintiff admits, that no valid judgment herein could be rendered in his favor and against the defendants. We find that no error was committed by the trial court. The judgment appealed from is affirmed.

RAND, C. J., and BELT and LUSK, JJ., concur.