**SUTTON v. TEXAS CO.**

No. 6114.

United States Court of Appeals Fourth Circuit.

Argued June 12, 1950.

Decided July 26, 1950.

J. Francis Paschal, Wake Forest, N. C. (Ray B. Brady, Raleigh, N. C., on the brief), for appellant.

Clem B. Holding, Raleigh, N. C. (Bailey & Holding, Raleigh, N. C., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and WYCHE, District Judge.

DOBIE, Circuit Judge.

This civil action was instituted in the Superior Court of Wake County, North Carolina, by the plaintiff, R. H. Sutton, and was removed to the United States District Court for the Eastern District of North Carolina by the defendant, the Texas Company, a Delaware corporation doing business in North Carolina. The case was tried without a jury and, at the close of plaintiff's evidence, was dismissed on the merits by the District Judge. Plaintiff has duly appealed to us.

The plaintiff operated, in Apex, North Carolina, a filling station which he leased from the defendant. On December 23, 1947, while at his place of business, the plaintiff was injured by the fall of an overhead sliding door. James Harrington, an employee of the plaintiff, was lifting the door over his head when, as he succinctly put it: " * * * I heard something crack, noise over my head, door began to get heavy and I hollered 'come here and help me.' He (the plaintiff) run to grab it away from me. Just as he run to grab it I could not hold it no longer and the door fell into his arms."

This door, which was at the entrance to the grease pit, was approximately ten feet square, weighed between eight and nine hundred pounds, and was constructed so as to move up and down by means of a spring and steel cables which ran over rollers at the top of the door on either side.

The plaintiff testified that after he took possession of the filling station on January 3, 1946, he found the door was difficult to operate and that he then notified the defendant of that fact. The plaintiff secured a mechanic, who was paid by the defendant, to fix the door; but the door still failed to operate properly and defendant then sent mechanics who repaired it. On several subsequent occasions the door did not operate satisfactorily and each time defendant sent mechanics to make repairs. No repairs had been made for at least six months prior to the date of the injury suffered by the plaintiff.

The only question before us is whether the District Court properly held "that the evidence fails to show that the injuries sustained by the plaintiff * * * resulted from the negligence of the defendant." The plaintiff testified that the door fell because one of its supporting cables snapped, that the cable had never snapped before, and that up to the time of the injury nothing was wrong with the door except that it was hard to push up and down.

The lease agreement between plaintiff and defendant provided in part as follows: "(5) —Maintenance. Lessee shall, during the term of this agreement, maintain the said premises, buildings and equipment, in good repair and in a clean, safe and healthful condition. In event of Lessee's failure so to do, the Lessor may make the necessary repairs for the account of Lessee. Lessee

shall make no change, alteration or substitution in the demised premises, buildings or equipment, except such as may be necessary to enable Lessee to continue business on said premises, unless the consent in writing of lessor be first obtained." Thus the burden of making repairs to the premises was on the plaintiff, and such repairs as were effectuated through mechanics procured by defendant were made at the request of the plaintiff.

The District Judge correctly stated in his Memorandum Opinion that "The only evidence upon which negligence might be predicated is the unexplained snapping of the wire cable which supported the door." [90 F.Supp. 7, 8.] He further found that there was no "showing that this cable was defective or that it was too small," that there was "no evidence of how much time elapsed between the date of repairs and the date of the accident" and "no evidence of what care was taken to keep the mechanism in order."

The plaintiff testified that the door was hard to let up and down before the accident occurred and that his employee had said one of the cables was tighter than the other; but there is no evidence that the defendant knowingly permitted any dangerous condition to exist. Viewing the evidence in the light most favorable to the plaintiff, we must conclude that no negligence on the part of the defendant contributing to the injury received by the plaintiff is shown.

This is not, as the plaintiff contends, a proper case for the application of the doctrine of *res ipsa loquitur*. It is settled in North Carolina that the doctrine does not apply where the existence of negligent default is not the more reasonable probability and the mere proof of the occurrence, without more, leaves the matter resting only in conjecture, or where the instrumentality causing the injury is not under the exclusive control or management of the defendant. See Etheridge v. Etheridge, 222 N.C. 616, 24 S.E.2d 477; Dail v. Taylor, 151 N.C. 284, 66 S.E. 135, 28 L.R.A.,N.S., 949; Womble v. Merchants' Grocery Co., 135 N.C. 474, 47 S.E. 493. In the case before us, the reason for the snapping of the cable can only be found within the realm of conjecture. The plaintiff was in a better position than the defendant to know of any defect in the door and pursuant to the terms of the lease was in the control of the door at the time of the accident. This control by the plaintiff over the instrumentality causing the injury prevents any application of the principles of *res ipsa loquitur* in the instant case. See Buie v. Powell, 215 N.C. 67, 1 S.E.2d 102; Armstrong v. Acme Spinning Co., 205 N.C. 553, 172 S.E. 313 (instrumentality within control of fellow servant); Saunders v. Norfolk & W. Ry. Co., 185 N.C. 289, 117 S.E. 4, 29 A.L.R. 1258.

The judgment of the District Court is affirmed.

Affirmed.